OPINION
{¶ 1} Plaintiffs-appellants Margie T. Patterson and Lewis Patterson appeal the June 22, 2004 judgment of the Court of Common Pleas of Shelby County, Ohio. Following a bench trial, the trial court found against appellants on all of the claims in their amended complaint, and entered judgment in favor of Defendant-appellee, Neil E. Patterson.
 {¶ 2} This case involves an interfamily dispute over money and property formerly owned by Margie and her husband, William Patterson, Sr. Neil is the youngest of Margie and Bill, Sr.'s four children; the Patterson's children, in order of birth, are Patrick, Lewis, William, Jr., and Neil. Before his death in October, 1996 Bill, Sr. owned two farms in Shelby County, Ohio. Throughout the course of their lives, the four boys each helped operate the farm at different times.
 {¶ 3} At the core of this dispute is Neil Patterson's operation of one of the two farms after Bill, Sr.'s death, and his dealings with his mother during that time. Before Bill, Sr.'s death he had an agreement with Neil whereby Neil would stay and help operate the 200 acre farm on which Bill, Sr. and Margie lived. This was the family farm that Bill, Sr. owned in fee simple. Neil lived on the farm rent, room and board free, and he received one-third of the proceeds from the farm. In exchange, Neil helped operate the farm and agreed to pay one-third of all expenses pertaining to that operation.
 {¶ 4} At the same time, Bill, Sr. had an agreement will Bill, Jr. pertaining to operation of the second farm, which was 204 acres. Bill, Sr. had a life estate interest in this farm, and the farm passed on to Bill, Jr. in fee simple upon his father's death. Under the terms of their agreement, Bill, Jr. paid his father $10,000 per year to rent the farm. He paid all of the expenses for operating the farm, and enjoyed all of the proceeds from its operation.
 {¶ 5} In August of 1993, Margie Patterson suffered a stroke. This prompted Margie and Bill, Sr. to have their wills drawn up, which was accomplished in November of 1993 with the help of their attorney, Gary Flinn, who was also their nephew. The will provided that upon the death of the surviving spouse, Neil would inherit the 200 acre farm he had been helping his father operate since 1980. Patrick and Lewis were to share equally in the remainder of the estate. The record indicates that at this time, the remainder of the estate equaled approximately $100,000.00. Bill, Jr. was specifically excluded from the will, because he had already been provided for by virtue of his remainder interest in the other farm.
 {¶ 6} In 1994, Patrick became terminally ill. At the time, he was living in Tempe, Arizona and Neil came to care for him. Patrick's condition deteriorated to the point that early in 1995 Neil and Bill, Jr. brought him back to Shelby County. Patrick then stayed at the farm where Neil took care of him before his death later that year.
 {¶ 7} Upon Patrick's death, Neil became the administrator of his estate and traveled to Arizona to settle it. Neil produced a hand-written will dated January 1994, whereby Patrick had left the entirety of his estate to Neil. Bill, Jr. and Lewis dispute the authenticity of this will; Bill, Jr. testified that he had signed a hand-written will for Patrick as a witness, but does not believe it was the will Neil produced. He could not, however, remember the contents of that will.
 {¶ 8} While Neil was in Arizona settling Patrick's estate, Lewis' wife, Elaine Patterson, took Bill, Sr. and Margie to re-draft their wills. Lewis and Bill, Jr. had voiced their displeasure with the first will, feeling that it was unfair to Lewis to allow Neil to inherit the farm. In March 1995, Bill, Sr. and Margie executed new wills, which were once again drafted by attorney Gary Flinn. Under the terms of the new will, the family farm would be divided equally between Neil and Lewis upon the death of the surviving spouse. Neil would also receive the farm equipment and household goods, while all other tangible property would go to Lewis. Bill, Jr. was again intentionally left out because he was already provided for.
 {¶ 9} In April 1995, the Pattersons consulted with another attorney, Paul Princi, who was recommended by their family doctor. Thereafter, Bill, Sr. and Margie executed powers of attorney to Neil, documents which were prepared by Princi. The record reflects conflicted testimony regarding who contacted Paul Princi. At this time, Bill, Sr. was ill and had become bedridden. Neil testified that he did not request the powers of attorney, nor was he present when they were signed.
 {¶ 10} Neil returned to the family farm and took full responsibility for operating the farm in lieu of his father's failing health. He also took care of his father during this period until Bill, Sr.'s death in October 1996. The record indicates that neither Neil nor Bill, Jr. paid their obligations under their respective agreements with their father in 1996. Both sons testified that their mother had forgiven this debt after their father's death. Additionally, the record indicates that Bill, Sr. and Margie Patterson paid certain sums of cash as gifts upon the advice of their attorney, Gary Flinn: Neil received $20,000.00, Lewis received $20,000.00 and Lewis' wife, Elaine, received $10,000.00.
 {¶ 11} Margie Patterson was named executrix of her husband's estate. However, due to her own poor health, she declined appointment in favor of Lewis and Bill, Jr., at their suggestion. Bill, Jr. testified that Lewis and he were concerned about her poor health, and did not want her to have to travel to the attorney's office and deal with the execution of the will. Gary Flinn represented the estate during the execution of Bill, Sr.'s will, and in November 1996 drew up another will for Margie to sign. The new will again divided her estate equally between Lewis and Neil.
 {¶ 12} The brothers argued throughout this period about what Margie should do with her estate and who the farm should go to upon her death. One witness, Taunya Haney, who had lived at the house for a period of time, testified that Neil, Lewis, and Bill, Jr. were constantly arguing with Margie about what to do with the farm — she said that "nobody let her make her own decision."
 {¶ 13} Then, in February 1997, Margie went with Neil to see her attorney, Paul Princi. Although she argues before this court that Princi was Neil's attorney, Margie admitted at trial that Princi was acting as her attorney, and, in fact, she asserted attorney-client privilege at trial when Princi was called to testify. Princi also testified that he spoke with his client, Margie, alone, outside of Neil's presence. On the date she came in to see him, Princi drafted a new will for Margie which was signed and executed the same day. The 1997 will mirrored the original will executed in 1993; the will left the entire estate, including the farm, to Neil. Moreover, in the event that Neil did not survive her, the entire estate went to Margie's grandson, Matthew Patterson. The 1997 will provides that Margie intentionally left nothing to Bill, Jr. and Lewis "because they have been provided for during my lifetime."
 {¶ 14} On August 13, 1997 Margie and Neil returned to Paul Princi's offices. On that date Princi prepared, and Margie executed, a deed giving title of the farm to Neil. Princi testified that while Neil accompanied his mother to the office, Neil was not involved in preparing the deed and the deed was prepared at Margie's instruction. The deed was recorded on October 14, 1997.
 {¶ 15} At issue in this case is what happened with Margie's income — the cash she had in her accounts, the income generated from the farm, her social security income, and the remainder of the estate minus the value of the farm. The record reflects that Neil, prior to his father's death, had sold all of the grain his father had in storage and placed the proceeds into his individual bank account. However, Bill, Jr. and Lewis, as executors of Bill, Sr.'s estate, made no inquiry into the whereabouts of the grain or the proceeds from the sale. There is no evidence in the record to establish how much Neil received for the sale of the grain. Additionally, at the time of Bill, Sr.'s death an inventory and appraisal was done of the estate, which indicates that the estate totaled $32,850.00 in tangible personal property, $3,445.08 in intangible personal property, $4,700.00 total value in automobiles transferred to Margie, and $444,982.00 in real estate, which was the value of the farm. Moreover, Margie had her own bank account which the record reflects had approximately $24,000.00 at the time of Bill, Sr.'s death, and she was receiving income from social security.
 {¶ 16} Neil lived on the farm with Margie before and after Bill, Sr.'s death in 1996, though they maintained individual bank accounts. Although he had been granted power of attorney for Margie in 1995, there is no indication in the record that he used this power of attorney prior to his father's death in 1996. Margie continued to maintain her own bank accounts, and she wrote checks off of those accounts until August of 2000, at which time Neil took her checkbook away from her. He indicated that she had become increasingly lax about recording her checking account activity in her check register, and had begun filling out checks improperly.
 {¶ 17} Margie's social security income was directly deposited into her checking account at Fifth Third Bank on a monthly basis. There was testimony to the fact that money was transferred out of her accounts and into Neil's individual accounts at various points, although neither party provided an accounting of those bank transactions at trial. The trial court noted that no evidence was presented to verify amounts transferred between the two accounts or withdrawn from Margie's account. Moreover, there was no evidence presented representing monies spent by Margie herself.
 {¶ 18} Margie's health eventually deteriorated to the point where Neil had trouble taking care of her on his own. She spent some time in hospitalization and then spent a short time in a nursing home. Eventually, Neil began paying for Margie to be taken care of in a private home. Then, Margie was removed from that home and went to live with her sister. Finally, Margie went to live with Lewis and Elaine.
 {¶ 19} Not long after Margie began living with Lewis and Elaine, Lewis and Bill, Jr. took her to their attorney's office where she signed a revocation of Neil's power of attorney and then granted power of attorney to Bill, Jr. and Lewis. Shortly thereafter, Margie filed the instant litigation seeking to recover monies spent by Neil out of her accounts.
 {¶ 20} After the onset of litigation, questions arose pertaining to Margie's competency to bring suit. The trial court ordered a psychological evaluation, but did not issue a ruling. In December 2002, she filed an Amended Complaint in which Bill, Jr. and Lewis were added as party-plaintiffs. Prior to trial, Bill, Jr. was dismissed as a party-plaintiff pursuant to court order. Subsequently, a four day bench trial was held. In its judgment entry, the court found that Margie lacked the capacity to provide appropriate testimony. The court found that when she testified at trial she was unable to remember various facts pertaining to the litigation, showed signs of confusion, and was unable to answer simple questions. The court therefore found that her testimony was not credible.
 {¶ 21} As to the merits of the Amended Complaint, the trial court found that Margie and Lewis had presented insufficient evidence to fulfill their burden of proof on each of their causes of action. The court also found that Lewis' claims were barred by the applicable statute of limitations because they were brought more than four years after the August 13, 1997 conveyance of property from Margie Patterson to Neil Patterson. Plaintiffs appeal, asserting twelve assignments of error. For ease of discussion, we will address the assignments of error out of order.
 Statute of Limitations
The appellants' second assignment of error asserts:
2. The trial court erred in finding that lewis patterson's discovery ofthe property transfer from margie to neil fell under the four-yearstatute of limitations period provided in ohio revised code section2305.09(c).
The parties agree that the claims in the complaint by Lewis Patterson involve the 1997 property transfer when Margie deeded the farm to Neil. He asserts that Neil obtained the deed to the farm by fraud or undue influence. At issue in this assignment of error is when Lewis became aware of the alleged fraud.
 {¶ 22} R.C. 2305.09(C) provides for a four year statute of limitations on causes of action alleging fraud. That statute also provides that the statute of limitations does not begin to run until the fraud is discovered. R.C. 2305.09(D). The Ohio Supreme Court has interpreted this statute to mean that the four-year limitations period does not commence to run until the complainants have discovered, or should have discovered, the claimed fraud. Investors REIT One v. Jacobs (1989),46 Ohio St.3d 176, ¶ 2b of the syllabus. Additionally, "[n]o more than a reasonable opportunity to discover the fraud is required to start the period of limitation." Au Rustproofing Ctr. v. Gulf Oil Corp. (C.A.6, 1985), 755 F.2d 1231, 1237 (citations omitted). Therefore, the question before this court is when Lewis knew or should have known about the fraudulent activity he alleges.
 {¶ 23} The record makes clear via Lewis' own testimony that Lewis knew of the transfer of the real estate property in 1997. During direct examination, Lewis testified as follows:
Q: After — at some point in time you became aware of — approximately1997 or later — that your mother had signed a deed?
 A: That is correct.
 Q: Did you ever see the deed.
 A: No, I didn't.
 Q: Do you know whether — what kind of an interest she signed over toNeil?
 A: No, I did not.
 Q: Did you talk to her about it?
 A: I just had went there probably latter part of September in '97 andasker her about it.
 Q: Did she tell you about it?
 A: I said, Mom, did you sign the farm over to Neil? And she said, do Ihave to tell you? And I said, you just did.
By his own admission, Lewis was aware that Margie had transferred some type of interest in the property to Neil in 1997. At this point in time, the Patterson brothers had been squabbling over their inheritance rights in the farm for several years. The fact that Margie had transferred a property interest to Neil would therefore have put Lewis on notice of the possibility that Neil may have adversely influenced his mother. At the very least, if there was any fraudulent activity it should have been discovered at that point in 1997. "Once sufficient indicia of fraud are shown, a party cannot rely on its unawareness or the efforts of the opposition to lull it into a false security to toll the statute." AluminumLine Products Co. v. Brad Smith Roofing Co., Inc. (1996),109 Ohio App.3d 246, 260 (citation omitted). Therefore, since the Amended Complaint, the only complaint to which Lewis was a party, was not filed until December 12, 2002 the four-year statute of limitations had run its course. Thus, the trial court did not err in holding that Lewis's claims were barred by R.C. 2305.09. The second assignment of error is therefore overruled.
 Procedural Issues 10. The court inappropriately excluded William Patterson, Jr. from thelitigation.
 {¶ 24} Appellants argue that the trial court erred in dismissing William Peterson, Jr. from the litigation. Ohio Civ.R. 17(A) provides that "[e]very action shall be prosecuted in the name of the real party in interest." "A `real party in interest' is one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefited or injured by the outcome of the case." West Clermont Ed. Ass'n v. West Clermont Local Bd.of Ed. (1980), 67 Ohio App.2d 160, 162, citing State ex rel. Dallmanv. Court of Common Pleas (1973), 35 Ohio St.2d 176.
 {¶ 25} Appellants' claim that Bill, Jr. is a "real party in interest" because he is next of kin to Margie Patterson and is therefore entitled to some inheritance. However, the record in this case makes clear that Bill, Jr. was not to be provided for in his parents' will. Unlike Lewis, Bill, Jr. is not claiming any inheritance rights that have been adversely affected by the Neil. Therefore, he has no legal or financial interest at stake in the litigation, and cannot be a real party in interest. Accordingly, appellants' tenth assignment of error is overruled.
 Manifest Weight of the Evidence
The remaining assignments of error assert:
1. The court misconstrued several statements of fact, which may becrucial to the ultimate decision in this case.
 3. The trial court erred in finding that Margie Patterson, on her own,directed that Paul Princi draw the deed. The court attaches nosignificance to the fact that neil was always present when margie metwith attorney princi. Also, this was done right after the completion ofWilliam Patterson, Sr.'s estate, when the services of Gary Flinn werebeing utilized, and shortly after a new will had been done by Gary Flinnfor margie patterson.
 4. The court failed to find an implied/constructive trust in therelationship between margie patterson and neil patterson.
 5. The court erred in not finding merit in the Fourth and Fifth causesof action. The arguments set forth in the Fourth Assignment of Errorclearly indicate that the fourth and fifth causes of action of theplaintiffs do have merit.
 6. The court failed to find undue influence by neil patterson upon hismother.
 7. The court failed to find that the defendant mishandled plaintiff'sentitlement to medicaid, to her detriment.
 8. The court failed to find a breach of fidcuciary duty or fraud in theconveyance of the property from the plaintiff to the defendant.
 9. The court failed to find defendant's actions so willful andwonton as to justify punitive damages.
 11. [The] trial court's judgment is against the manifest weight of theevidence.
 12. The court failed to find that neil patterson intentionallyinterfered with the expected inheritance rights of lewis patterson.
 {¶ 26} In these assignments of error, appellant challenges the findings of facts and conclusions of law of the trial court. Upon review of a trial court's judgment following a bench trial, an appellate court is "guided by the presumption" that the trial court's findings are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79 — 80. Accordingly, a judgment supported by some competent, credible evidence will not be reversed on appeal unless it is against the manifest weight of the evidence. Id.; see also, C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.3d 279; App.R. 12(C). This rule applies to the lower court's findings of fact as well as the conclusions of law. The State, ex re. Pizza v. Strope (1990), 54 Ohio St.3d 41, 46
("Where a court has made a factual determination . . . the decision of the court will not be reversed unless the determination upon which it is found is against the manifest weight of the evidence."). "[W]here there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." Myers v. Garson
(1993), 66 Ohio St.3d 610, 614.
 {¶ 27} In her first and third assignments of error, Margie Patterson argues that the trial court misconstrues certain pieces of evidence or fails to give credence to factual circumstances she deems important to an overall determination of this case. Specifically, she argues that the trial court erred in concluding that Paul Princi acted as Margie's attorney and drafted documents pursuant to her requests without any undue influence from Neil. She also takes exception to the trial court's determination of the adequacy of the accounting she provided which, according to her, documents her losses.
 {¶ 28} After review of the record, we find that the trial court's factual determinations were supported by competent, credible evidence. Contrary to Margie's assertions in her brief and in argument before this court, Paul Princi testified at trial that although Margie and Neil came to his office together, he spoke to Margie individually, outside of Neil's presence. He also testified that Neil did not ask him to draft the power of attorney, the 1997 will, or the 1997 deed.
 {¶ 29} Furthermore, Margie asserted attorney-client privilege when Princi was asked to testify about his conversations with her regarding the 1997 will and deed. This supports the trial court's conclusion that Princi was acting as her attorney when preparing these documents. As the trial court noted, Margie is attempting to use Princi as both a sword and a shield in this case — she argues that he did not prepare any documents at her request and, in fact, was acting as Neil's attorney and at his request, but she also wishes to claim her conversations with Princi were privileged communications. She cannot have it both ways. By asserting attorney-client privilege, Margie concedes that Princi was acting as her attorney.
 {¶ 30} Moreover, Neil testified that he did not ask Princi to prepare these documents, and that the power of attorney was prepared at this parents' request:
Q: Had you ever been to Paul Princi before?
 A: Yeah, he came — well, his secretary — I'd never been to his officeor talked to him about anything. But in April of '95, his secretary,Arleen, and an assistant came out and had Dad sign some paperwork forpower of attorney."
 Q: Okay. Did your Mom sign a power of attorney on April 16th also?
 A: Yeah. I wasn't in the house to watch what was goin' on, butthey —
 Q: Who contacted Paul Princi?
 A: — gave me the power of Attorney. I believe my mom must have.
 Q: Please?
 A: My mom must have. My dad wasn't able to use the phone.
 Q: You didn't?
 A: No, I didn't.
 Q: You didn't take them —
 A: I didn't —
 Q: — to Paul Princi.
 A: I didn't take them to Paul Princi, no.
 Q: And you didn't call to have a power of attorney done?
 A: No.
Thus, there is competent, credible evidence in the record to support the trial court's findings that Margie, and not Neil, had contacted Paul Princi and asked for the power of attorney, and that she communicated with Princi without any undue influence from Neil. There was also competent, credible evidence in the record to support the court's finding that Margie asked Princi to prepare the deed in 1997.
 {¶ 31} Margie also argues that the trial court incorrectly found that Margie Patterson forgave Neil Patterson for any debt accrued from January 1, 1996 onward. However, there is nothing in the trial court's June 22, 2004 decision and entry to support Margie's assertion that the trial court made this finding. The only reference to the forgiveness of debt in the trial court's judgment entry is in its recounting of the facts. The trial court noted that both Neil and Bill, Jr. testified to the fact that their mother forgave their respective debts owed to their parents for rent and expenses in the year of Bill, Sr.'s death. However, the trial court never made a specific finding on the issue of forgiving debt, nor was it required to resolve this issue in order to resolve the causes of action in the complaint.
 {¶ 32} Based on the foregoing, the record indicates that the trial court's factual findings were supported by competent, credible evidence. Thus, we hold that the court's factual determinations were not against the manifest weight of the evidence. Appellants' first and third assignments of error are overruled.
 {¶ 33} The remaining assignments of error attack the legal conclusions of the trial court. In its decision and entry, the trial court found that the causes of action in the Amended Complaint all failed for lack of sufficient evidence. Margie and Lewis essentially ask this court to examine their causes of action anew, without any deference to the trial court's determination. As stated earlier, we cannot do so; we must affirm the trial court's holdings if there is some competent, credible evidence to support the court's conclusions.
 {¶ 34} In the fourth, fifth, sixth, and eighth assignment of error, Margie argues that the evidence was sufficient to establish fraud, undue influence, and breach of a fiduciary duty on the part of Neil, and that there was a constructive trust between Margie and Neil.
 {¶ 35} First, our review of the record indicates that the evidence supports the trial court's determination that there was no fraud or undue influence on Neil's part. A party claiming undue influence over the making of a will or a deed of real estate must establish: (1) susceptibility of the person granting the deed or making the will, (2) that another person had opportunity to exert influence over that decision, (3) that the other person exerted or attempted to exert improper influence, and (4) that the improper influence had the desired affect. Krishbaum v. Dillon (1991), 58 Ohio St.3d 58, 65, Hamilton v.Hector (1997), 117 Ohio App.3d 816, 820. "General influence, however strong or controlling, is not undue influence unless brought to bear directly upon the act of making the will." West v. Henry (1962),173 Ohio St. 498, 501.
 {¶ 36} As previously stated, the record supports the trial court's conclusion that Princi acted as Margie's attorney in 1997 when she drafted a new will and deeded the farm to Neil. At both meetings in Princi's office, he met with her individually, outside of Neil's presence and verified her intentions. Thus, at the time of the act itself, there is credible evidence supporting the conclusion that Neil was not exerting improper influence over his mother's decisions.
 {¶ 37} Moreover, there is no other evidence establishing fraud. Margie's entire argument rests on repeating two facts: (1) Margie was left an estate valued over $480,000.00 when her husband passed away, and (2) there was little or no money left in those accounts several years later. While these facts tend to paint Neil in bad light, it ignores several other facts in the record and Margie provides no evidence of what happened to the money. The bulk of the estate was tied up in the real estate property, which was deeded to Neil. As for the remaining assets, the record indicates that before Bill, Sr.'s death he paid two-thirds of the expenses for the farm, while Neil paid one-third. The record also reflects that Margie took no part in the operation of the farm before that time. The evidence merely shows that Neil continued to operate the farm after his father's death — including acquiring all of the necessary equipment, produce, etc. — and that monies were transferred from Margie to Neil. Therefore, we concur with the trial court's determination that there was insufficient evidence to demonstrate fraud.
 {¶ 38} Third, since the trial court correctly concluded that there was insufficient evidence of fraud, undue influence, or breach of fiduciary duty, there was no error in failing to find that a constructive trust existed between Margie and Neil. The Ohio Supreme Court has defined a constructive trust as follows:
A constructive trust is, in the main, an appropriate remedy againstunjust enrichment. This type of trust is usually invoked when propertyhas been acquired by fraud. However, a constructive trust may also beimposed where it is against the principles of equity that the property beretained by a certain person even though the property was acquiredwithout fraud.
 Ferguson v. Owens (1984), 9 Ohio St.3d 223, 226, 459 N.E.2d 1293; see also Lawrence v. Bailey (Jan. 25, 2000), Marion App. No. 9-99-37, unreported, 2000 WL 51803, at *5. In Lawrence, we recognized that where there was no evidence of fraud or undue influence, the expressed language in a testamentary provision will indicate the testator's intent.Lawrence, supra at *5. Absent evidence of a contrary intent, we held that there was insufficient evidence to create a constructive trust. Id.
 {¶ 39} As appellant noted in her brief, it is hard for this court to determine exactly what went on in this case. However, with competent, credible evidence supporting the trial court's conclusion that Neil did not improperly influence or fraudulently induce Margie into deeding him the farm or creating the 1997 will, there is insufficient evidence to raise a presumption that a constructive trust should be created in the farm.
 {¶ 40} Based on the foregoing, we hold that the trial court's conclusions that there was no fraud, undue influence, breach of fiduciary duty, or constructive trust relationship were not against the manifest weight of the evidence. Accordingly, appellant's fourth, fifth, sixth, and eighth assignments of error are overruled.
 {¶ 41} In the seventh assignment of error, appellants argue that the trial court erred in failing to find that Neil had negligently mishandled Marge's entitlement to Medicaid benefits because the transfer of real estate property prevented her from becoming eligible for Medicaid until at least 2008. As stated earlier, there was competent, credible evidence to support the trial court's decision that there was nothing improper regarding the transfer of the real estate. Therefore, Neil could not have acted negligently in the real estate transfer, which was an action taken by Margie, not him. There is no evidence to support plaintiffs' allegations of negligence. Accordingly, the seventh assignment of error is overruled.
 {¶ 42} In the ninth assignment of error, appellants argue that the trial court erred in failing to find that Neil's conduct was so willful and wanton as to justify punitive damages. However, when there is competent, credible evidence to support the trial court's conclusions that there was no wrongdoing on the part of Neil, plaintiffs cannot recover punitive damages. Accordingly, the ninth assignment of error is overruled.
 {¶ 43} In the twelfth assignment of error, appellants claim that the trial court erred in failing to find that Neil interfered with Lewis's expected inheritance rights. The elements of the tort of intentional interference with expectancy of inheritance are:
(1) an existence of an expectancy of inheritance in the plaintiff; (2)an intentional interference by a defendant(s) with that expectancy ofinheritance; (3) conduct by the defendant involving the interferencewhich is tortious, such as fraud, duress or undue influence, in nature;(4) a reasonable certainty that the expectancy of inheritance would havebeen realized, but for the interference by the defendant; and (5) damageresulting from the interference. Firestone v. Galbreath (1993),67 Ohio St.3d 87, 88. As previously discussed, there was competent, credible evidence supporting the trial court's determination that there was no fraud or undue influence in this case. Therefore, Lewis is unable to establish all of the elements of the tort. Accordingly, appellants' twelfth assignment of error is overruled.
 {¶ 44} Based on the foregoing discussion, there is competent credible evidence supporting the trial court's decision and judgment entry. Therefore, the entry is not against the manifest weight of the evidence, and appellants' eleventh assignment of error is overruled.
 {¶ 45} The judgment of the trial court is hereby affirmed.
Judgment Affirmed.
 Bryant and Rogers, J.J., concur.