DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal of a judgment of the Wood County Court of Common Pleas for appellees Darwin Limes, LLC and Dale H. Limes on appellant Donald W. Lime's counterclaim for judicial dissolution of Darwin Limes, LLC. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} This case arises out of disputes related to a family farming operation under appellee limited liability corporation ("LLC"). The LLC Members appellees Charles Limes and Dale Limes, and appellant Donald Limes, each own a 32.667 percent share of the company. Appellee Member Betty Limes Roberts owns a 2 percent share. Under the Operating Agreement entered into on December 30, 1996, all four siblings were "Managing Members." By a June 30, 2004 Addendum to the Operating Agreement the parties agreed that Betty was no longer a Managing Member, although she was still a non-voting Member.
 {¶ 3} By 2004, disputes arose over use of the land. Appellant had traditionally farmed it on a cash rent basis and claimed an oral lease, allowing him to farm the land for his lifetime. On September 20, 2004, Dale issued to all Members and Managing Members, a notice of a meeting to be held on October 4, 2004. By correspondence dated October 4, 2004, Charles and Dale notified appellant of the decision reached at the meeting that any arrangement appellant may have to farm the LLC's land was terminated effective for the 2005 growing season.
 {¶ 4} On March 11, 2005, the LLC and Dale, individually and as Member and Managing Member of the LLC, filed a complaint against appellant, Charles, and Betty alleging six causes of action, including a declaratory judgment action regarding the rights of the parties. The complaint also sought appointment of a receiver, damages and, as last resort alternative form of relief, judicial dissolution of the LLC pursuant to R.C. 1705.47. *Page 3 
 {¶ 5} On April 14, 2005, appellant opposed appointment of a receiver, filing a memorandum. On April 25, 2005, after a hearing on the matter, the trial court denied appellees' request for appointment of a receiver. On April 29, 2005, appellant filed his answer and counterclaim for judicial dissolution of the LLC pursuant to R.C. 1705.47, based on the impasse between Managing Members regarding operation of the LLC.
 {¶ 6} On August 15, 2005, appellant moved for partial summary judgment on appellees' declaratory judgment action and his own counterclaim for judicial dissolution of the LLC.
 {¶ 7} While the motion for summary judgment was pending, Charles called a meeting of Members and Managing Members to be held on September 13, 2005.[1] At the September 13, 2005 meeting, Charles and Dale voted to remove appellant as a Managing Member. They also voted to offer to Dale and appellant, by way of closed bids, a one year lease of the land for the 2006 crop year. Appellant successfully bid and retained the lease for crop year 2006 at $54,000, which was $10,000 more than appellant paid the previous year.
 {¶ 8} In a March 22, 2006 order, the trial court denied appellant's motion for partial summary judgment on appellees' declaratory judgment claim and his counterclaim for judicial dissolution. On May 1, 2006, appellees dismissed their complaint. The *Page 4 
matter proceeded to a bench trial on appellant's counterclaim for judicial dissolution of the LLC.
 {¶ 9} On June 2, 2006, the trial court entered a judgment for appellees on appellant's counterclaim for judicial dissolution of the LLC and declared that appellant was not a Managing Member, but rather a Member entitled to vote on any matter that must be submitted to a vote of the Members under the Operating Agreement. Appellant appeals this decision.
 {¶ 10} In his four assignments of error, appellant asserts:
 {¶ 11} "THE TRIAL COURT ERRED IN FAILING TO GRANT DONALD W. LIMES' MOTION FOR SUMMARY JUDGMENT.
 {¶ 12} "THE TRIAL COURT ERRED IN CONSIDERING DONALD W. LIMES REMOVED AS A MANAGING MEMBER WHERE THE ONLY EVIDENCE OF REMOVAL WAS THE MINUTES OF A MEETING SUGGESTING THAT THE REMOVAL WAS BY VOTE OF THE MANAGING MEMBERS.
 {¶ 13} "THE TRIAL COURT ERRED IN FINDING THAT THE LIMITED LIABILITY COMPANY WAS NOT DISSOLVED PURSUANT TO SECTIONS 1705.43(A)(2) AND/OR 1705.47 OF THE OHIO REVISED CODE.
 {¶ 14} "THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW." *Page 5 
 {¶ 15} In appellant's first assignment of error, he asserts that the trial court erred in denying his motion for partial summary judgment.[2] We review de novo the trial court's ruling on the summary judgment motions. Conley-Slowinski v. Superior Spinning (1998),128 Ohio App.3d 360, 363. A movant is entitled to summary judgment pursuant to Civ. R. 56(C) when he demonstrates "that there is no issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party." Miller v. BikeAthletic Co. (1998), 80 Ohio St.3d 607, 617; Civ. R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt (1996),75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(E). *Page 6 
 {¶ 16} Appellant's first argument relative to the summary judgment decision claims that the trial court improperly considered evidence created by appellees after the summary judgment issues were decisional. Appellant is referring to the September 13, 2005 meeting, at which, by vote of the two other Managing Members (Charles and Dale), appellant was removed as a Managing Member and a new bid system was implemented for yearly lease of the land. Appellant also asserts that appellees' initial summary judgment responses were filed late.
 {¶ 17} The trial court's general pretrial scheduling order gave the parties 14 days to respond to any summary judgment motions filed by opposing counsel. Appellant filed his summary judgment motion on August 15, 2005. Appellees Charles and Betty filed their response on August 31, 2005. Appellee Dale filed his response on September 2, 2005. Thus, technically, Charles and Betty's response was one day late and Dale's response was three days late. However, we find that any issue related to appellees' initial summary judgment responses being one to three days late is harmless error or a defect which did not affect the substantial rights of the parties in this case. See Civ. R. 61.
 {¶ 18} Under Loc. R. 4.04(F), appellant's summary judgment motion was deemed submitted on September 12, 2005, 28 days after filing. Thus, appellant contends that the events of the September 13, 2005 meeting is newly created evidence that should not have been considered by the trial court.
 {¶ 19} There is case law to the effect that evidence "created" as opposed to "discovered" during the pendancy of a R.C. 119.12
administrative appeal is not *Page 7 
admissible. See Northfield Park Assoc. v. Ohio State Racing Comm., 10th Dist. No., 2006-Ohio-3446, ¶ 59 citing Golden Christian Academy v.Zelman (2001), 144 Ohio App.3d 513, 517. Further, the doctrine of law of the case in a Civ. R. 60(B) context has been found to preclude newly "created" evidence. See Brooks v. Ohio State Anesthesia Corp. (Aug. 29, 1996), 10th Dist. No. 96APE05-576 citing Diversified Benefit PlansAgency, Inc. v. Duryee (1995), 101 Ohio App.3d 495. However, appellant fails to cite any cases applying a similar "newly created evidence" concept in a summary judgment context.
 {¶ 20} Instead, there is ample case law to support a trial court's discretion in managing its own docket. See e.g. Guy Trucking Inc. v.Domer, 6th Dist. No. WD-03-077, 2004-Ohio-4269, ¶ 27 ("Recognizing the trial court's special expertise and familiarity with case management issues and the court's discretion to manage its own docket"). The trial court apparently attempted to address appellant's concerns prior to the September 13, 2005 meeting but was unable to reach appellant's counsel.[3] Once the other members took action at the September 13, 2005 scheduled meeting — allegedly proper under the Operating Agreement — the trial court had to acknowledge it in making the summary judgment determination.[4] *Page 8 
 {¶ 21} Further, we note that the trial court was aware of intervening events and, pursuant to an October 31, 2005 pretrial order, allowed the parties an extension of time until December 15, 2005 to brief additional summary judgment issues, with an additional ten days for reply briefs. On December 15, 2005, Charles Limes filed a supplemental memorandum in opposition to appellant's summary judgment motion, including evidence arising from the September 13, 2005 meeting. On December 27, 2005, appellant filed his response. The trial court deemed the matter decisional with the filing of the reply brief, pursuant to the pretrial order. Under the unique facts of this case, we find it was proper for the trial court to consider the effect of the actions taken at the September 13, 2005 meeting.
 {¶ 22} Appellant's second argument relative to summary judgment asserts that the LLC dissolved automatically under the terms of the Operating Agreement when both Dale and appellant filed for judicial dissolution and there was no unanimous agreement to continue the business. Essentially appellant contends that the Operating Agreement has self-executing dissolution provisions.
 {¶ 23} Initially, we note that little case law exists regarding operation of LLC's,[5] much less the specific issue of dissolution of an LLC under the terms of an operating *Page 9 
agreement. Further, both Dale's alternative claim of relief for dissolution in the complaint and appellant's counterclaim for dissolution were filed under R.C. 1705.47 which provides for judicial (not automatic) dissolution.
 {¶ 24} With regard to reviewing the language of the Operating Agreement and the alleged self-executing dissolution provision, "[t]he cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." FosterWheeler Enviresponse, Inc. v. Franklin Cty. Convention FacilitiesAuth, 78 Ohio St.3d 353, 361, 1997-Ohio-202, citing Aultman Hosp. Assn.v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 53. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.'" Id., quoting Kelly v. Med. Life Ins.Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. It is a tenant of contract interpretation that "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v.Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus.
 {¶ 25} In addition we note that, as pled, this case involves judicial dissolution pursuant to R.C. 1705.47. "The Ohio Supreme Court has said that `[i]t is elementary that no valid contract may be made contrary to statute, and that valid, applicable statutory provisions are part of every contract.'" Holdeman v. Epperson, 2nd Dist. No. Civ.A. 2004-CA-49,2005-Ohio-3750, ¶ 25 quoting Bell v. Northern Ohio Tel. Co. (1948), 149 *Page 10 
Ohio St. 157, 158. Provisions in the Ohio Revised Code are read into limited liability company operating agreements, and if inconsistencies exist, the statutes will control. Id. ¶ 26.
 {¶ 26} The relevant portions of the Operating Agreement that appellant cites for his automatic or self-executing dissolution argument are contained in Articles X and XII. Relative to dissociation of a Member, the Operating Agreement states:
 {¶ 27} "10.1 Dissociation. Except as approved by the specific written consent of all Members at the time, a person shall cease to be a Member upon the happening of any of the following events:
 {¶ 28} "* * *
 {¶ 29} "10.1.2. The bankruptcy or insolvency of a Member, upon the assignment of the Member's interest for the benefit of a creditor, orupon any such other actions as set forth in § 1705.15(C) of theOhio Revised Code; " (Emphasis added.)
 {¶ 30} The bankruptcy, insolvency, and assignment for the benefit of creditors "prohibitions" in the Operating Agreement mirror those listed separately in R.C. 1705.15(C)(1) through (3). In turn, R.C. 1705.15(C)(4) provides that if a member does the following, it is considered an "event of withdrawal" as a member of a limited liability company:
 {¶ 31} "(4) Files a petition or answer in any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief proceeding under any law or rule that seeks forhimself any of those types of relief;" (Emphasis added). *Page 11 
 {¶ 32} Appellant argues that Appellee Dale ceased being a Member upon his filing of the alternative claim for judicial dissolution, based on the language of R.C. 1705.15(C)(4). At first blush, this could appear to be a viable interpretation. However, we agree with the trial court's interpretation that R.C. 1705.15(C)(4) applies to corporate or partnership members of an LLC, not natural persons. In Sayers v.Artistic Kitchen Design, (Ga.App. 2006), 633 S.E.2d 619, in analyzing a somewhat analogous provision in the Georgia Limited Liability Company Act, the court held that filing a complaint seeking reorganization of another member, did not result in dissociation of the plaintiff member since they did not seek that action for themselves.
 {¶ 33} Similar to Sayes, Dale did not seek dissolution forhimself. He filed an alternative complaint for dissolution for the LLC. Hypothetically, if a corporation were a member of an LLC, the corporation would have been dissociated from that LLC upon filing the complaint.[6] This reading also is consistent with R.C. 1705.15(G)-(I), which provides other events triggering dissociation:
 {¶ 34} "(G) Unless otherwise provided in writing in the operating agreement, if a member is a partnership, the dissolution and commencement of winding up of the partnership. *Page 12 
 {¶ 35} "(H) Unless otherwise provided in writing in the operating agreement, if a member is a separate limited liability company, the dissolution and commencement of winding up of the separate limited liability company.
 {¶ 36} "(I) Unless otherwise provided in writing in the operating agreement, if a member is a corporation, a certificate of dissolution or its equivalent is filed for the corporation, or its charter is revoked and is not reinstated within ninety days after the revocation."
 {¶ 37} Further, this reading is consistent with the tenet of many LLC statutes that the right to petition for judicial dissolution may not be subject to contrary agreement.[7] Appellant's interpretation, for all practical purposes, leaves no meaningful right for an individual member to seek judicial dissolution without dissociating oneself. The language of R.C. 1705.15 involving dissociation of members differentiates between individual and corporate members.
 {¶ 38} Thus, we conclude that no member was dissociated under the terms of the Operating Agreement since both the complaint filed by appellee Dale and the counterclaim filed by appellant sought judicial dissolution for the LLC, and not for the members personally. However, even if we adopted appellant's interpretation that Dale was dissociated under section 10.1.2, we agree with the trial court's conclusion that dissolution under section 12.1.2 did not occur. The Operating Agreement states:
 {¶ 39} "12.1 Dissolution. The Company shall be dissolved and its affairs wound up upon the first to occur of the following events, which unless the Members *Page 13 
unanimously agree to continue the business within ninety (90) days, shall constitute Dissolution events:
 {¶ 40} "* * *
 {¶ 41} "12.1.2 The dissociation of any Managing Member, whether due to death, insanity, bankruptcy, retirement, resignation, or expulsion, unless the business of the Company is continued with the unanimous consent (by unanimous vote in interest) of all the Members within 90 days after such dissociation;"
 {¶ 42} We agree with the trial court that it is significant that this provision does not include the mere filing of a pleading in dissolution proceedings as set forth in appellant's interpretation of R.C. 1705.15(C).
 {¶ 43} We also agree with the trial court that interpreting the Operating Agreement to impose an automatic or self-executing dissolution, particularly when the parties have filed for a judicial dissolution under R.C. 1705.47, would render the statute meaningless. Further, there is a place for a judicial dissolution under R.C. 1705.47, which requires an evaluation by a trial court as to whether it is "reasonably practicable to carry on the business of the company in conformity with its articles of organization and operating agreement." It is that evaluation which we now undertake.
 {¶ 44} In the present case, Article II of the Operating Agreement provides the following with regard to the Nature of Business: "The Company shall be to own and manage real estate and other investments. * * * "There is only one Ohio case addressing "reasonably practicable" regarding the operation of an LLC. In McConnell v. Hunt *Page 14 Sports Ent. (1999), 132 Ohio App.3d 657, one member of Columbus Hockey Limited ("CHL"), a limited liability company, filed a claim for judicial dissolution of CHL pursuant to R.C. 1705.47. CHL was created in 1996 "to invest in and operate a franchise in the NHL." Id. at 668. However, ultimately, CHL was not the ownership group awarded the NHL franchise in 1997. The court held that the fact that the franchise was owned by a group different from the ownership group originally contemplated made it no longer reasonably practicable to carry on the business of CHL, as CHL's only business was investing in and operating an NHL franchise. Id. at 696.
 {¶ 45} In the present case, the business of the LLC is farming. Even if appellant dissociates as a member, the Operating Agreement provides for continuation of the LLC unless only one Member remains. Based on the award of the farming lease to appellant, under the newly instituted bidding process, and evidence of continued operation of the LLC, the trial court did not find it was no longer reasonably practicable to carry on the business of the LLC. We agree. Reasonable minds can only conclude that it is reasonably practicable to carry on the business of the company in conformity with its articles of organization and operating agreement. Therefore, judicial dissolution is not appropriate. Appellant's first assignment of error is not well-taken.
 {¶ 46} In his second assignment of error, appellant argues that the trial court erred in considering him removed as a Managing Member, based on the provisions of the Operating Agreement. Section 5.2 of the Operating Agreement provides as follows regarding the Term of Office as Managing Member: *Page 15 
 {¶ 47} "No Managing Member shall have any contractual right to such position. Each Managing Member shall serve until the earlier of:
 {¶ 48} "* * *
 {¶ 49} "5.2.3 Removal of the Managing Member."
 {¶ 50} Section 5.10 states:
 {¶ 51} "Any Managing Member may be removed by the affirmative vote of all the other Members for cause." (Emphasis added.)
 {¶ 52} Appellant argues that a vote of more that just the Managing Members was required to remove him, since section 5.10 specifies a vote of "all the other Members[.]" Essentially appellant contends that the vote of appellee Betty Limes Roberts was also required. However, pursuant to a June 30, 2004 Addendum to the Operating Agreement, Betty was no longer a voting Member. Therefore, appellant was properly removed by the vote of Charles and Dale, the only other voting Members remaining.
 {¶ 53} Appellant further argues that the Managing Members could only remove him "for cause" and they had no cause. "Cause" is not defined in the Operating Agreement. However, both Dale and Charles testified regarding appellant's apparent refusal to discuss or negotiate anything other than his exclusive continued oral lease of the land for farming into perpetuity.
 {¶ 54} Section 5.9 of the Operating Agreement provides:
 {¶ 55} "Managing Members' standard of care. A Managing Member shall discharge his duties to the Company and other Members in good faith and in a manner he *Page 16 
reasonably believes to be in the best interest of the Company as an ordinary, prudent person in a similar position would do."
 {¶ 56} The trial court did not err in considering as cause for removal, appellant's apparent refusal to entertain the possibility of someone other than himself farming the land. Appellant's second assignment or error is not well-taken.
 {¶ 57} In appellant's third and fourth assignments of error, he claims that the trial court erred at the trial stage in failing to order dissolution and that the trial court's judgment is against the manifest weight of the evidence. "Upon review of a trial court's judgment following a bench trial, an appellate court is `guided by the presumption' that the trial court's findings are correct." Patterson v.Patterson, 3d Dist. No. 17-04-07, 2005-Ohio-2254, ¶ 26, quotingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. "Accordingly, such a judgment that is supported by some competent, credible evidence will not be reversed on appeal unless it is against the manifest weight of the evidence." Patterson, ¶ 26 citing SeasonsCoal and CE. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.3d 279; App. R. 12(C). This rule applies to the lower court's findings of fact as well as the conclusions of law. Patterson, ¶ 26 citing TheState, ex rel. Pizza v. Strope (1990), 54 Ohio St.3d 41, 46. "`[W]here there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court.'" Patterson, ¶ 26 quoting Myers v. Garson (1993), 66 Ohio St.3d 610, 614. *Page 17 
 {¶ 58} We conclude that through our de novo review of the summary judgment issues relative to dissolution of the LLC, and upon review of the entire record, we have found competent and credible evidence supporting the findings and conclusions of the trial court at trial. That conclusion is that it is reasonably practicable to carry on the business of the company in conformity with its articles of organization and operating agreement. Appellant's third and fourth assignments of error are not well-taken.
 {¶ 59} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App .R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski P.J., William J. Skow, J., Thomas J. Osowik, J., concur.
[1] On September 7, 2005, appellant filed a motion for authority to farm and a restraining order to prevent the other Members from holding this meeting before the trial court ruled on the pending summary judgment motion. Appellant did not request an ex parte TRO, however, requesting "all parties * * * be given notice and an opportunity to be heard[.]" Due to scheduling issues, this motion was not ruled upon and was later rendered moot.
[2] "Generally, any error by a trial court in denying a motion for summary judgment is harmless if a subsequent trial on the same issues demonstrates that a genuine issue of material fact existed, supporting a judgment in favor of the party against whom the motion was made.Continental Ins. Co. v. Whittington (1994), 71 Ohio St.3d 150 syllabus. A narrow opening exists for appellate review of the denial of summary judgment after a cause of action has proceeded to a final verdict at trial if the adverse ruling was based on a pure question of law."Williams v. ITT Financial Services (June 25, 1997), 1st Dist. No. C-960234 FN5 citing Donovan v. Omega World Travel, Inc. (Oct. 5, 1995), Cuyahoga App. No. 68251. To the extent that appellant's first assignment of error is based on pure questions of law involving interpretation of the Operating Agreement, statutes, and the Rules of Civil Procedure, we consider his arguments.
[3] March 22, 2006 summary judgment order, FN4.
[4] Once held, the request that the court enjoin the meeting was moot. See e.g. Sawyer v. Pioneer Mill Col. (C.A.9, 1962), 300 F.2d 200,201-202, citing Sobel v. Whittier Corp (C.A.6, 1952), 195 F.2d 361
(citations omitted. ("since the purpose was to prevent the meeting on the proposed merger], * * * and since the present action is not an appropriate vehicle for an attack upon the merger, the action has become moot") Moreover, a court should only enjoin a shareholder meeting without an evidentiary hearing where there is "urgent necessity." See e.g. Shlensky v. South Parkway Bldg Corp. (Ill.App. 1953),112 N.E.2d 716, (Issuance of a TRO without a hearing was error, where complaint involved issues related to exercise of business judgment and not issues of bankruptcy or insolvency).
[5] A "national movement" in creating LLC's, a conceptual hybrid of partnerships and corporations, started in Wyoming in 1977. Lieberman v.Wyoming com LLC (Wyo. 2000), 11 P.3d 353, 356 Courts have recognized "widely divergent rules" exist regarding this developing area of law, limiting the precedential value of case law from state to state. Id. at 357. However, where potentially helpful, we cite some foreign case law.
[6] This interpretation is also consistent with the language of the Uniform Limited Liability Company Act, and with interpretation of LLC statutes in treatises. See e.g. Uniform Limited Liability Company Act (1996) § 601 "Events causing member's dissociation"; Larry E. Ribstein and Robert R. Keatinge, 1 Ribstein and Keatinge on Limited LiabilityCompanies § 11:5, "Events causing dissolution."; Steven C. Alberty, 1Advising Small Businesses 7:47, "Dissociation of members" (each differentiates between members who are individuals and members that are a corporation, partnership, trust, or separate LLC).
[7] Ribstein and Keatinge on Limited Liability Companies § 11:5. *Page 1