OPINION
{¶ 1} Defendant-appellant Toby Spencer, Sheriff of Darke County, Ohio, appeals from a judgment granting plaintiff-appellee and cross-appellant Samuel Scott Glisson possession of a 1976 Super Glide Motorcycle, except for the frame and gearbox. Spencer contends that the trial court erred in ordering the return of the *Page 2 
motorcycle parts, because Glisson failed to establish by a preponderance of the evidence that he was entitled to the return of any parts under R.C. 4569.62(D)(2)(b)(ii).
 {¶ 2} We conclude that the judgment of the trial court is supported by competent, credible evidence. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In January 2006, the Darke County Sheriffs Department recovered a stolen 1976 Harley Super Glide motorcycle, model EL16, in the southern part of Darke County. The plates indicated that the motorcycle was registered to Samuel Scott Glisson, an Indiana resident. About six weeks earlier, Glisson's motorcycle had been stolen from a friend's garage, and Glisson had promptly reported the theft to the police.
 {¶ 4} Detective Rodney Baker was familiar with Glisson and his family because of prior dealings with the family, including a search warrant that had involved stolen property. Consequently, Baker went to look at the motorcycle and then called a Harley-Davidson dealership in Richmond. There was nothing about the motorcycle itself that caused Baker to believe it might be subject to forfeiture or destruction.
 {¶ 5} At Baker's request, Greg Shade, the service manager for the Harley-Davidson Center in Richmond, inspected the motorcycle, which had a vehicle identification number (VIN) of 40EL1606 located on the frame. During Shade's testimony, the following exchange occurred:
 {¶ 6} "Q.: And could you tell us what was unique about that vehicle identification number as you inspected it on that Harley-Davidson motorcycle? *Page 3 
 {¶ 7} "A.: It didn't dawn on me at the time I inspected it but looking at motorcycles from the 1970's, the VIN number was in the opposite orientation on the frame down tubes. It was from top to bottom instead of bottom to top.
 {¶ 8} "Q.: Okay. Again, for us lay people, does that just mean it was upside down from what it should have been?
 {¶ 9} "A.: Yes." Trial Transcript, pp. 62-63.
 {¶ 10} After learning that the VIN was stamped upside down, Baker contacted the crime lab and took the motorcycle to Mark Landis, of the Ohio State Highway Patrol, who does VIN verifications. Landis performed an acid restoration, which is a chemical process that can reveal concealed numbers. It appeared that the frame had been ground down and the VIN had been stamped on top of another number. Landis was able to uncover only the last six digits of the underlying number, which were 4N4534. However, when Landis contacted the National Crime Bureau, the number could not be traced because of the age of the information. The police subsequently submitted the numbers for the transmission case and engine, and found that the transmission casing had been stolen in California in 1977. The transmission casing itself was dated 1971. Because the VIN had been altered, Baker brought the motorcycle back to the impound lot. The police refused to permit Glisson to retrieve the motorcycle, and Glisson filed a replevin action in February 2006, seeking the return of the motorcycle. Spencer did not file either a counterclaim or an action seeking forfeiture of the motorcycle.
 {¶ 11} At trial, Glisson testified that he had purchased the 1976 Harley Super Glide in 1991, from a friend, Scott Smith. The motorcycle was a complete unit at that *Page 4 
time, and the purchase price was $2,500. When Glisson purchased the motorcycle, it was old and he intended to customize it. The customization process took about seven years, because the parts were expensive. Glisson stated that he tore everything off the old motorcycle and built it up by buying aftermarket products. Every part on the motorcycle was new except the frame and the transmission case, which may have been reused. Glisson submitted a number of receipts for parts and repairs, dated between 1996 and 2003. Glisson indicated that these documents did not represent all the purchases he made, but that his ex-wife had the file of receipts from the first five years during which he rebuilt the motorcycle. However, they were not on good terms, and he could not obtain the receipts. Glisson also produced the certificate of title for the motorcycle and a statement of origin for the engine block.
 {¶ 12} Glisson denied having any knowledge when he bought the motorcycle that the frame was not original, with the original VIN, nor did he have any knowledge that the transmission case had ever belonged to anyone else. When Glisson applied for the title in 1997, the VIN came up as being listed to a 1976 Super Glide, ASM EL 16 motorcycle. Glisson indicated that when he registered the motorcycle, the license bureau gave him no reason to believe there was a problem.
 {¶ 13} Scott Smith, the person who sold Glisson the motorcycle, testified that he had purchased the motorcycle from Jeff Price in 1987, and had sold it to Glisson in the late summer or fall of 1991. Smith indicated that the motorcycle was titled during the four years that he owned it, and that he had no knowledge of the VIN being altered or covered up in any way. Smith verified that Glisson had changed nearly everything on the motorcycle after Glisson purchased it, and had done an ongoing build on the *Page 5 
motorcycle for a number of years, whenever he had the money.
 {¶ 14} The service manager, Shade, testified that the first two numbers on the VIN designate the year of the motorcycle as 1940. According to Shade, 1940 Harley-Davidson motorcycles did not have serial numbers on the frame. Based on the style and design of the frame, Shade concluded that the frame on Glisson's motorcycle was manufactured between 1971 and 1984.
 {¶ 15} The second two characters in the VIN identify the model (EL), which is what Harley-Davidson refers to as a "knuckle head," and the last four numbers (1606) are the sequential serial number. The VIN on Glisson's Indiana certificate of title is not consistent with the identification of the motorcycle as a 1976 ASM EL16 motorcycle.
 {¶ 16} After hearing the evidence during a bench trial, the trial court concluded that Glisson was entitled to the return of all parts of the motorcycle, except the frame and the gearbox. Spencer appealed from the judgment and Glisson cross-appealed. However, Glisson has not assigned any error in the judgment. Therefore, only Spencer's assignment of error will be considered.
 II {¶ 17} Spencer's sole assignment of error is as follows:
 {¶ 18} "THE TRIAL COURT ERRED IN ORDERING THE RETURN TO THE PLAINTIFF, THE MOTORCYCLE (WITH THE EXCEPTION OF THE FRAME AND GEARBOX) WHEN THE PLAINTIFF FAILED TO ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT HE WAS ENTITLED TO THE RETURN *Page 6 
OF ANY OF THE PARTS OF THE MOTORCYCLE AS SET FORTH UNDER REVISED CODE 4549.62(D)(2)(b)(ii)."
 {¶ 19} Under this assignment of error, Spencer contends that Glisson failed to meet the burden, under R.C. 4549,62(D)(2)(b)(ii), of proving the original identify of all the parts that were ordered to be returned, the ownership of the parts, and that he was the lawful owner of the parts. In this regard, Spencer points to various deficiencies in the receipts and inconsistencies in Glisson's testimony. For example, a number of the receipts do not specifically identify the 1976 Super Glide or the seller of the parts. In addition, Glisson testified that he purchased the motorcycle in 1991, but the date of purchase on the Indiana certificate of title is listed as April 28, 1997. Glisson also testified that he had paid $2,500 for the motorcycle, but the price listed on the application for a certificate of title is only $100.
 {¶ 20} R.C. 4549.62(D)(2) permits seizure and forfeiture of vehicles from which the VIN or a derivative of the VIN has been removed, defaced, covered, altered, or destroyed, "pending a determination of the original identify and ownership of the vehicle and parts of the vehicle, and the rights of innocent owners to reclaim the remainder or any part of the vehicle." R.C. 4549.62(D)(2)(b) further provides that:
 {¶ 21} "The lawful owners of parts upon a vehicle that has been seized under this section and that is subject to forfeiture under Chapter 2981. of the Revised Code are entitled to reclaim their respective parts upon satisfactory proof of all of the following:
 {¶ 22} "(i) That the part is not needed for evidence in pending proceedings involving the vehicle or part and is not subject to forfeiture under Chapter 2981. of the Revised Code; *Page 7 
 {¶ 23} "(ii) That the original identity and ownership of the part can be determined and that the claimant is the lawful owner of the part;
 {¶ 24} "(iii) That no vehicle identification number or derivative of a vehicle identification number on the part has been destroyed or concealed in such a manner that the identity of the part cannot be determined from that number;
 {¶ 25} "(iv) Payment of all costs of removing the part."[1]
 {¶ 26} R.C. 2981.01(B)(5) defines an "innocent person," among other things, as "any bona fide purchaser of property that is subject to forfeiture * * *." A lawful owner is entitled to reclaim parts as to which he can show sufficient evidence of ownership. See, e.g., State v.Bare (June 28, 1989), Montgomery App. No. 11296, 1989 WL 72226, * 2 (holding that an owner is entitled to an evidentiary hearing on the issue of whether he could prove rightful ownership under R.C. 4549.62(D)(2)(b) to parts of a seized vehicle); *Page 8 
and State v. Scalish (Nov. 8, 1989), Medina App. No. 1800,1989 WL 135824, * 2 ("the lawful owner of the parts of the seized vehicle is entitled to reclaim those parts to which he can present sufficient proof of ownership.")
 {¶ 27} The trial court concluded that Glisson was both an innocent purchaser of the motorcycle and a lawful owner of the parts, other than the frame and gearbox. The court, therefore, held that Glisson could recover the parts except for the frame and gearbox.
 {¶ 28} R.C. 4549.62(D)(2)(b)(ii) does not specify how an individual shall prove the original identity and ownership of a part. Glisson's testimony was corroborated by the individual who sold him the motorcycle, and by various receipts for parts, the certificate of title, and the origin of ownership of the engine block. Although Spencer challenges Glisson's testimony and documentation, the trial court found Glisson's testimony credible, and we defer to the trial court on issues of credibility. "The `rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" In re J.Y., Miami App. No. 07-CA-35, 2008-Ohio-3485, at ¶ 33, quoting from Seasons Coal Co., Inc.v. City of Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 29} Although a discrepancy exists between the sale date on the title and the date of purchase, both Glisson and his witness testified that Glisson rebuilt the motorcycle over the course of several years after the initial purchase. Glisson, therefore, would have had no need to immediately apply for the title. Furthermore, the *Page 9 
trial court did not attach significance to this or to the discrepancy in the sales price reflected on the title. This was not unreasonable, in view of the fact that the only verified stolen part resulted from a theft that occurred in California in 1977. This was fourteen years before Glisson purchased the motorcycle in Indiana, and twenty years before he obtained a certificate of title.
 {¶ 30} As to the fact that many of the receipts do not specifically refer to the motorcycle in question, Spencer failed to offer any evidence that Glisson owned any other motorcycles between 1991 and 2005. In fact, Spencer's evidence related almost entirely to the fact that the VIN on the frame had been altered, and that the number on the transmission case was traceable to a 1977 theft. Glisson did not deny these facts, but indicated that he had no knowledge of any alterations when he purchased the motorcycle. The individual who sold Glisson the motorcycle likewise indicated that he had no awareness of any problems with the motorcycle's origin when he purchased it in 1987. We note that fact that the placement of the VIN was incorrect did not even occur to an experienced Harley-Davidson service manager when he first inspected the motorcycle.
 {¶ 31} In reviewing a trial court judgment after a bench trial, we are" `guided by the presumption' that the trial court's findings are correct." Patterson v. Patterson, Shelby App. No. 17-04-07,2005-Ohio-2254, at ¶ 26, quoting from Seasons Coal Co.,10 Ohio St.3d at 79-80. We also may not substitute our judgment for that of the trial court where there is "competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." 10 Ohio St.3d at 80." `A reviewing court should not reverse a decision simply because it holds a different opinion concerning the *Page 10 
credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.'" Gevedon v. Ivey, 172 Ohio App.3d 567, 579, 2007-Ohio-2970,876 N.E.2d 604, at ¶ 54, quoting from State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, 865 N.E.2d 1264.
 {¶ 32} The trial court's judgment does not contain errors of law and is supported by competent, credible evidence. Accordingly, Spencer's single assignment of error is overruled.
 {¶ 33} As a final matter, we note that Spencer never filed a forfeiture action against the motorcycle, nor did he file a counterclaim in the replevin action asserting entitlement to the property under R.C. 4549.62. At the time of the seizure, the applicable forfeiture statute required law enforcement agencies to apply to the court and receive an order of disposition for the property. See R.C. 4569.62(D) and R.C. 4569.62(D)(6). The statute in effect at the time of the hearing, and currently still in effect, requires the prosecutor to file civil forfeiture actions within thirty days of seizure of a mobile instrumentality. See R.C. 2981.03(F) and R.C. 2981.05(A). This also did not occur. We make no finding on this point, however, since Glisson has not assigned any error. See App. R. 12(A)(1)(b) and App. R. 16(A)(3) and (B). Indeed, Glisson has asked us to affirm the judgment of the trial court.
 III {¶ 34} Spencer's sole assignment of error having been overruled, the judgment of the trial court is Affirmed. *Page 11 
GRADY and DONOVAN, JJ., concur.
[1] At the time Glisson's motorcycle was seized, R.C. 4549.62(D) indicated that R.C. 2933.41 applied to the seizure and forfeiture of property. R.C. 2933.41 was repealed effective July 1, 2007, by Sub. H. Bill 241, which also amended R.C. 4549.62(D) to provide that the property would be subject to seizure and forfeiture under R.C. Chapter 2981. Section 4 of Sub. H. Bill 241 also stated that courts should, to the extent practicable, apply Chapter 2981 to actions that were commenced before July 1, 2007, and were still pending on the effective date of the act. The present action was filed in February 2006, but was still pending on July 1, 2007. In fact, the evidentiary hearing was not held until July 23, 2007. *Page 1