BROADSTONE et al., Appellees; Broadstone; Cross–Appellant,

v.

QUILLEN et al., Appellants and Cross–Appellees.

[Cite as *Broadstone v. Quillen,* 162 Ohio App.3d 632, 2005-Ohio-4278.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–688.

Decided Aug. 18, 2005.

The Plymale Partnership, L.L.P., and Andrew W. Cecil; Bernard M. Floetker, for appellees.

Curry, Roby, Schoenling & Mulvey and Lynne K. Schoenling, for appellants.

BROWN, Presiding Judge.

{¶ 1} This is an appeal by defendants-appellants, James E. Quillen and Rick's Custom Towing, from a judgment of the Franklin County Court of Common Pleas, awarding damages to plaintiffs-appellees, Patti Broadstone and Ronald Broadstone, in a negligence action arising out of an automobile accident. Appellee Patti Broadstone has filed a cross-appeal from the trial court's entry denying appellees' motion for prejudgment interest.

{¶ 2} On May 26, 2000, appellees were in a vehicle at the intersection of Muirfield Drive and Perimeter Loop Road, Dublin, when Quillen failed to yield on a left turn, thereby colliding with appellees' vehicle. On May 24, 2002, appellees filed a complaint against appellants, alleging that Quillen's negligence caused pain, damages, injury, and suffering to appellee Patti. In addition to alleging negligence on the part of Quillen, appellees alleged that appellant Rick's Custom Towing either negligently entrusted the vehicle to Quillen or that Quillen was in the course and scope of his agency or employment with Rick's Custom Towing at the time he was operating the vehicle. On July 23, 2004, appellees filed motions for attorney fees and prejudgment interest.

{¶ 3} The case proceeded to a bench trial beginning December 1, 2003. At the time of trial, the parties stipulated to liability, leaving the issues of causation and potential damages to be tried by the court.

{¶ 4} Patti, age 50, gave the following testimony at trial. She and her husband, Ronald, are the parents of a 13–year–old adopted son, Hunter. Patti performs household duties and is not currently employed outside the home. Before

becoming a full-time mother, she was employed at The Ohio Company as an executive assistant to the senior vice-president of sales, working there for approximately 13 years until 1992.

{¶ 5} Immediately after the automobile accident on May 26, 2000, Patti noticed tenseness in her shoulder and neck area, but she did not see a doctor at that time. In November 2000, after experiencing some sensations in her left arm, she saw her family physician, Dr. Roger Wilt, but did not tell him about the automobile accident because she "didn't see any need to." Dr. Wilt prescribed Vicodin, but Broadstone eventually stopped taking the medication because she felt "zoned out."

{¶ 6} By December 2000, the pain was more frequent and intense, and Dr. Wilt referred her to Dr. R. Michael Meagher. Patti did not tell Dr. Meagher about the automobile accident in May 2000 because she "didn't think it had any connection." Patti, who was uncomfortable with Dr. Meagher, began seeing another physician, Dr. Edward Sadar; again, Patti did not initially inform this physician about her automobile accident.

{¶ 7} On April 13, 2001, Dr. Sadar performed surgery on Patti. According to Broadstone, the surgery was very successful, alleviating the pain in her arm and upper torso. Prior to the surgery, in January 2001, Patti had stopped playing tennis and could not carry anything heavy, but following the surgery, she returned to most of her normal activities. On cross-examination, when asked whether she was making any claims for lost wages or lost income, Patti responded, "No."

{¶ 8} Appellee Ronald testified that his wife "does all of the cooking, cleaning, the housework, taking care of raising [their son]." He asked his wife "to stay at home and be a stay-at home mother in 1992 because [he] wanted her to raise [Hunter]." He further testified that, since the surgery, she has done "[v]ery well."

{¶ 9} Dr. Wilt practices with Northwest Family Physicians, and has treated Patti since 1993. In November 2000, Patti came to Dr. Wilt's office complaining of pain radiating down her arm. Dr. Wilt prescribed some antiinflammatory medications. He believed at the time that she was probably suffering from a pinched nerve. In February 2001, Patti returned to Dr. Wilt's office complaining of neck and upper back pain, and Dr. Wilt referred her for physical therapy. The therapy was unsuccessful, so Dr. Wilt prescribed a steroid treatment, as well as a more potent pain medication. Dr. Wilt eventually ordered an MRI test, which indicated that Patti was suffering from disc herniations, which result in pinched nerves.

{¶ 10} Dr. Wilt opined that the disc herniations were likely triggered by the car accident on May 26, 2000. On cross-examination, he stated that it is "nearly impossible" to establish a direct link between the car accident and the disc herniations, but that "there is a high degree of probability * * * that the severe neck herniation * * * likely, was triggered by that car accident."

{¶ 11} Dr. Sadar, a neurological surgeon, testified on behalf of appellants. Dr. Sadar first saw Patti as a patient on March 29, 2001. Patti told Dr. Sadar that she first began experiencing neck pain and tingling in her left arm in November 2000. Following an MRI, Dr. Sadar felt that Patti had either a degenerative arthritic condition or a disc herniation. Dr. Sadar, who had performed surgery on Patti, opined that there was nothing he observed at the time of surgery that would allow him to determine a cause of the disc herniation.

{¶ 12} Approximately one month after the surgery, Dr. Sadar saw Patti for a follow-up examination. At that time, Patti's pain, numbness, and tingling were gone.

{¶ 13} On December 4, 2003, the trial court announced its decision on the record, finding that the accident on May 26, 2000, was the proximate cause of Patti's injuries and damages. By judgment entry filed on January 30, 2004, the trial court granted judgment in favor of appellees and against appellants, awarding Patti $38,126 for medical expenses, $50,000 for pain and suffering, and $50,000 for permanent impairment to her earning capacity. The court also awarded appellee Ronald $8,000 for loss of consortium and $2,500 for diminution in value resulting from damage to his motor vehicle.

{¶ 14} The trial court subsequently conducted a hearing on the issue of attorney fees and prejudgment interest. By entry filed July 2, 2004, the trial court denied appellees' motions for prejudgment interest and attorney fees.

{¶ 15} On appeal, appellants set forth the following single assignment of error for review:

The trial court committed reversible error in awarding $50,000.00 to plaintiff-appellee, Patricia Broadstone, for permanent impairment to her earning capacity.

{¶ 16} Cross-appellant Patti Broadstone sets forth the following assignment of error on cross-appeal:

The trial court erred in denying plaintiffs' motion for prejudgment interest.

{¶ 17} We will first address appellants' assignment of error, in which it is asserted that the trial court erred in awarding Patti $50,000 as damages for permanent impairment of earning capacity.

{¶ 18} In reviewing a trial court's judgment following a bench trial, "an appellate court is 'guided by the presumption' that the trial court's findings are correct." *Patterson v. Patterson,* Shelby App. No. 17–04–07, 2005-Ohio-2254, 2005 WL 1074809, at ¶ 26, quoting *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79–80, 10 OBR 408, 461 N.E.2d 1273. Thus, "a judgment supported by some competent, credible evidence will not be reversed on appeal unless it is against the manifest weight of the evidence." *Patterson,* supra.

{¶ 19} The Ohio Supreme Court has set forth the measure of damages for impairment of earning capacity as "the difference between the amount which the plaintiff was capable of earning before his injury and that which he is capable of earning thereafter." *Hanna v. Stoll* (1925), 112 Ohio St. 344, 353, 147 N.E. 339. In order to recover future damages, including future wage loss, a plaintiff must prove by sufficient evidence that he or she is "reasonably certain to incur such damages in the future." *Berge v. Columbus Community Cable Access* (1999), 136 Ohio App.3d 281, 321, 736 N.E.2d 517. Thus, "the showing of future loss of earnings in a personal injury case involves demonstrating with reasonable certainty that an individual's injury or condition prevents that individual from attaining his or her pre-injury wage." *Power v. Kirkpatrick* (July 20, 2000), Franklin App. No. 99AP–1026, 2000 WL 992028.

{¶ 20} In the instant case, the trial court announced its decision on the record and stated the following regarding the issue of damages:

And paragraph five is damages for permanent impairment to earning capacity, now understanding that at this time that, Patti is a full-time home-maker. And but that, that previous to this, she held full-time employment, at what was then The Ohio Company, as * * * an administrative assistant.

And I recognize that were she to go back to employment similar to that at some point because their child is, I believe, 12 or 13 at this point in time, and that's likely the type of position that she would go back to.

* * *

So what I am doing in an effort to try to be as even-handed about this as possible, is awarding medical expenses, which were provided in exhibit 1 of $38,126. Past and future pain, suffering: $50,000. Permanent impairment to earning capacity: $50,000.

{¶ 21} As noted, appellants' sole contention is that there is a lack of evidence to support an award for impairment of earning capacity. Upon review, we agree.

{¶ 22} At the outset, we note that it is not clear from the record how the court arrived at the $50,000 figure for permanent impairment to earning capacity. While the fact that Patti was not working at the time of the accident is not dispositive, the record in this case indicates that she last worked in 1992, and

appellees provided no evidence as to what Patti previously earned or what she might currently earn in her occupation (nor did she indicate any intention to secure employment in the future). Thus, the evidence was insufficient for a trier of fact to calculate, except by speculation, an award based upon Patti's earning capacity before and after the injury.

{¶ 23} More significantly, Patti's own testimony affirmatively established that her surgery was successful, alleviating the numbness, tingling, and pain in her arm and upper torso. During direct examination, Patti testified that, following the surgery, she returned to her normal activities and that there are no current activities that she cannot engage in or that limit her as a result of her injuries. Further, while Dr. Wilt testified that Patti would likely experience some stiffness in the future, there was no testimony linking that condition with her ability to perform the type of work she previously performed (or might perform in the future based upon her qualifications). In sum, there is nothing in the record to show that Patti's injuries prevent her, if she chooses to return to work, from engaging in her former work activities or attaining her preinjury wage.

{¶ 24} Thus, finding a lack of evidence demonstrating that the accident resulted in a disabling injury that will impair Patti's future ability to earn income, we conclude that the trial court erred in awarding her damages for impairment of earning capacity. Accordingly, appellants' single assignment of error is sustained.

{¶ 25} We next address Patti's cross-assignment of error, in which she asserts that the trial court erred in failing to grant appellees' motion for prejudgment interest.

{¶ 26} R.C. 1343.03(C) governs the award of prejudgment interest in tort actions and provides:

If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed.

{¶ 27} The party requesting prejudgment interest has the burden of demonstrating that the other party failed to make a good-faith effort to settle the case. *Loder v. Burger* (1996), 113 Ohio App.3d 669, 674, 681 N.E.2d 1357. The decision whether to grant or deny a motion for prejudgment interest is commit-

ted to the sound discretion of the trial court, and an appellate court will review such a determination for abuse of that discretion. Id.

{¶ 28} In *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, syllabus, the Ohio Supreme Court held:

A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer.

{¶ 29} In denying appellees' motion for prejudgment interest, the trial court expressed concern about certain pretrial issues that appellants' counsel was required "to deal with." More specifically, the court noted that appellants' counsel was faced with Dr. Wilt's conflicting letters regarding the issue of causation and that "one of those letters was withheld in discovery." The court reasoned that such circumstances "would objectively lead an attorney, who is defending a case, to believe that the trier of fact is going * * * to very much discount Dr. Wilt's testimony because of the change in these letters."

{¶ 30} Furthermore, in considering the issue of lack of good faith in attempting to settle the case before trial, the court expressed concern that "the defendants appeared with their adjuster at the settlement, and the plaintiffs didn't show." Thus, in denying the motion for prejudgment interest, the court found significant "the differences in the letters of * * * Dr. Wilt, * * * the withholding of the first letter in discovery and the failure of the plaintiffs to show up at the settlement conference."

{¶ 31} Upon review, we find that the trial court did not abuse its discretion in denying appellees' motion for prejudgment interest. Regarding the first *Kalain* factor, the evidence does not suggest that appellants failed to cooperate in the discovery process. Rather, on the issue of discovery, as noted above, the trial court's primary concern revolved around the two letters prepared by Dr. Wilt. Specifically, counsel for appellees acknowledged during the hearing on prejudgment interest that the initial report of Dr. Wilt was not favorable to appellees' case and that counsel requested that Dr. Wilt prepare a second report. In the first report, dated May 8, 2002, Dr. Wilt stated: "I find it nearly impossible to establish a direct relationship between her subsequent findings and the accident in May." In response to appellants' initial request for discovery documents, counsel for appellees submitted, on August 19, 2002, a number of documents, including several medical records. Those discovery materials, however, did not include Dr. Wilt's May 8, 2002 report.

{¶ 32} On October 22, 2002, counsel for appellees sent appellants' counsel a "demand package" regarding a possible settlement. Included in those documents was a subsequent report prepared by Dr. Wilt, dated September 12, 2002, in which he stated: "It is in my opinion with a reasonable degree of medical certainty that her multiple disk herniations are linked to the motor vehicle accident on May 26th [2000] even though her symptoms did not exacerbate to a point that she sought attention until May 30th, 2002."

{¶ 33} Patti's primary contention is that, under the second *Kalain* factor, appellants failed to rationally evaluate their risks and potential liability. Patti asserts that appellants chose to evaluate the case solely upon a "best case scenario" analysis and that appellants failed to reevaluate the case after the deposition of Dr. Wilt established the requisite proximate cause between the injuries to Patti and Quillen's negligence. Patti further notes that appellees ultimately made an offer to settle the case for $150,000, but that appellants offered no more than $1,500 in settlement negotiations.

{¶ 34} We find, however, that the trial court could have reasonably determined that appellants rationally evaluated the risks and potential liability. Under the facts of this case, Patti did not see a physician until November 30, 2000, approximately six months after the accident. At the time she initially began seeing several different physicians, she did not inform any of them of the May 2000 accident. We have previously noted that Dr. Wilt's initial report concluded that it was nearly impossible to establish a direct relationship between the accident and Patti's subsequent maladies. Further, appellees' counsel acknowledged that it was not until 29 months after the accident that he informed appellants that there was a report relating to causation. As also noted above, when the medical records were produced in August 2002, they did not contain the initial report of Dr. Wilt that was unfavorable to appellees' case. Rather, that report was not provided until appellants' counsel obtained records from Dr. Wilt.

{¶ 35} Further, in light of Dr. Wilt's decision to change his opinion from his initial report, we find nothing unreasonable about the trial court's conclusion that appellants' counsel could have objectively believed that a trier of fact might very well discount Dr. Wilt's opinion testimony at trial. In addition to Dr. Wilt's conflicting reports, appellants' counsel also had for consideration the opinion testimony of Dr. Sadar, the neurosurgeon who operated on Patti. Dr. Sadar stated that an individual with a disc herniation resulting from an automobile accident would not typically go six months without reports of pain or without medical treatment. Dr. Sadar also opined that he did not observe anything during the surgery that would permit him to determine the cause of Patti's disc herniation.

{¶ 36} Regarding the third *Kalain* factor, the evidence does not indicate, nor does Patti argue, that appellants attempted to unnecessarily delay the proceedings.

{¶ 37} Finally, given the conflicting evidence noted above going to the issue of proximate cause, the trial court could have reasonably concluded that appellants' offers in response to appellees' demands did not constitute a lack of good faith. Again, even though Dr. Wilt subsequently changed his opinion on the issue of causation, it was not unreasonable for appellants' counsel to believe that his opinion testimony would be discounted at trial. See *Wright v. Suzuki Motor Corp.*, Meigs App. No. 03CA2, 2005-Ohio-3494, 2005 WL 1594850 (finding that trial court did not abuse its discretion in denying a motion for prejudgment interest; until trial, defendants did not believe that plaintiff would be able to establish proximate cause, and thus they could have determined that their potential liability would be zero); *Stephenson v. R & R Sanitation, Inc.*, Portage App. No. 2002–P–0040, 2003-Ohio-5426, 2003 WL 22326954 (where issue of proximate cause was controvertible throughout litigation, appellee did not lack good faith in failing to make settlement offer). Further, the mere failure of a party to accurately predict the ultimate jury verdict and award does not constitute a lack of good faith. *Black v. Bell* (1984), 20 Ohio App.3d 84, 88, 20 OBR 105, 484 N.E.2d 739.

{¶ 38} Upon review, there was competent, credible evidence to support the trial court's findings, and we thus conclude that the court did not abuse its discretion in denying appellees' motion for prejudgment interest. Accordingly, Patti's single assignment of error on cross-appeal is overruled.

{¶ 39} Based upon the foregoing, appellants' single assignment of error is sustained, Patti's single cross-assignment of error is overruled, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

KLATT and SADLER, JJ., concur.