JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff Charles Fazio received a judgment totaling $115,200 as damages for injuries he suffered when struck by a vehicle driven by defendant Michelle Stefano. The court then granted Fazio's motion for prejudgment interest in the amount of $32,700. Stefano appeals, claiming that the parties executed an accord and satisfaction based on the $100,000 limits of her Allstate Mutual Insurance Company automobile insurance policy and that the court abused its discretion in any event by awarding prejudgment interest.
 I {¶ 2} R.C. 1343.03(C)(1) states:
 {¶ 3} " If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as follows:
 {¶ 4} " (a) In an action in which the party required to pay the money has admitted liability in a pleading, from the date the cause of action accrued to the date on which the order, judgment, or decree was rendered; * * *."
 {¶ 5} The party requesting prejudgment interest has the burden of demonstrating that the other party failed to make a good faith effort to settle the case. Broadstone v. Quillen,162 Ohio App.3d 632, 2005-Ohio-4278, at ¶ 27. The syllabus toKalain v. Smith (1986), 25 Ohio St.3d 157, addresses the concept of "a good faith effort to settle":
 {¶ 6} "A party has not `failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."
 {¶ 7} In Moskovitz v. Mt. Sinai Med. Ctr. (1994),69 Ohio St.3d 638, 659, the supreme court stated:
 {¶ 8} "The effect of Kalain is to place the burden of proof on a party seeking prejudgment interest. This is, to a degree, unfortunate since much of the information needed to make a case for prejudgment interest is in the possession of the party resisting an award. Accordingly, it is incumbent on a party seeking an award to present evidence of a written (or something equally persuasive) offer to settle that was reasonable considering such factors as the type of case, the injuries involved, applicable law, defenses available, and the nature, scope and frequency of efforts to settle. Other factors would include responses — or lack thereof — and a demand substantiated by facts and figures. Subjective claims of lack of good faith will generally not be sufficient. These factors, and others where appropriate, should be considered by a trial court in making a prejudgment interest determination."
 {¶ 9} The court's ruling on the efficacy of a party's settlement efforts is reviewed for an abuse of discretion.Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83.
 II {¶ 10} Before addressing the substantive issues relating to prejudgment interest, we consider Stefano's argument that Fazio breached an agreement with Allstate when he deposited Allstate's check for the limits of the policy but failed to execute an enclosed satisfaction of judgment entry. Allstate argues that it tendered to Fazio a check for $100,000, that amount representing the limits of liability. In a letter sent with the check to Fazio's attorney, Allstate's attorney wrote, "I am enclosing a satisfaction of Judgment entry which I would ask you to sign and return to me for filing." Fazio negotiated the check, but did not sign a satisfaction of judgment. Allstate argues that it tendered the check on the condition that Fazio sign the satisfaction of judgment entry, and that by negotiating the check, Fazio is barred from seeking any amount beyond that tendered in the check.
 {¶ 11} We can quickly dispose of this assignment of error because Allstate's letter to Fazio did not create a legal obligation for Fazio to sign a satisfaction of judgment as a condition for accepting the check. Allstate maintains that it conditionally tendered the check, but nothing in the letter remotely demonstrates that point. The letter requested Fazio's signature on a satisfaction of judgment entry (which Allstate failed to offer into evidence). This was not a demand, so Fazio was free to disregard this request and obviously did so. It bears noting that Allstate did not stop payment on the check, so its protestations of the check being conditional are specious. If Allstate truly conditioned its tender of the policy limits on a signed satisfaction of judgment, it should have used language that left no doubt about it.
 III {¶ 12} The parties agree that Fazio's entitlement to prejudgment interest rests on the question whether Allstate made a good faith monetary settlement offer or responded in good faith to Fazio's offer.
 {¶ 13} Fazio submitted evidence that his medical specials totaled $8,160.02. Several months prior to trial, Fazio offered to settle for $30,000. Allstate counter-offered with $6,295. That offer represented $3,395 for medical expenses and $2,900 for general damages. An Allstate representative testified at the hearing on the motion for prejudgment interest that he discounted the medical expenses based upon the expectation that Fazio would recover eight weeks after the accident. Shortly before trial commenced, Fazio lowered his offer to $20,000, but Allstate did not move off its original offer. There was some dispute as to whether Allstate's counter-offer was a "first and best and last" offer, but there is no dispute that Allstate did not budge from its original counter-offer and engaged in no further settlement negotiations after making its counter-offer.
 {¶ 14} Allstate maintains that its settlement offer was made in good faith based upon a fair evaluation of Fazio's case. It used its "Collossus" computer model to generate a settlement figure based, in part, on its belief that Fazio had suffered non-permanent, soft-tissue injuries that it expected to heal within eight weeks. The Allstate representative testified that he reached this conclusion despite knowing that Fazio had incurred a substantial amount of medical treatment beyond the eight weeks from the date of the accident. He explained that he questioned the permanency of Fazio's injuries because Fazio testified to being physically active despite undergoing treatment for his soft-tissue injuries, playing golf, basketball and teaching karate.
 {¶ 15} Fazio rightfully points out, however, that his physician believed otherwise: in response to questions about the permanency of Fazio's condition, the doctor testified, "I think there's permanency in the thoracic spine injury." Allstate did not reevaluate its settlement offer in light of this testimony, even though its representative testified that he knew of the physician's opinion as to the permanency of Fazio's injuries. In fact, the representative conceded that he did not change his opinion even though he had been aware of evidence that Fazio had not fully recovered from his injuries two years after the accident. Evidence presented at the hearing showed that Allstate's attorney recommended having Fazio undergo an independent medical examination, but Allstate did not request the examination in order to verify the permanency of the injuries.
 {¶ 16} Fazio also presented evidence that Allstate conducted two internal reviews of his claim. The first review listed $3,395 for medical expenses incurred, and gave the adjuster a "final settlement range" of $5,715-$6,295. A section called "Pilot Information" gave an adjuster's range of $15,000-$17,500. A second review, conducted just two weeks later, listed medical expenses of $5,200, with a final settlement range of $7,520-$8,100. The Pilot Information gave an adjuster's range of $12,500-$15,000. The Allstate representative testified that the adjuster's range decreased, despite there being more medical expenses, because of Fazio's demand for $20,000. Hence, despite having increased the settlement range, Allstate's representative actually devalued the claim.
 {¶ 17} The Allstate representative testified that the settlement range indicated to him the amount that Fazio would likely accept as settlement. He contrasted that with the value he personally put on the claim.
 IV {¶ 18} We conclude that the court did not abuse its discretion by granting prejudgment interest because it could rationally conclude that Allstate did not make a good faith effort to settle the case. Our conclusion is based on evidence of Allstate's refusal to engage in any further negotiations, despite having information that contradicted its own belief that Fazio's injuries were non-permanent. Objectively speaking, that refusal was unwarranted given Allstate's second evaluation of the case which factored in Fazio's increased medical expenses. Despite these additional expenses, the Allstate representative testified that Allstate's computer program actually decreased the adjuster's range. In short, despite being made aware of Fazio's additional medical expenses and an expert's opinion that Fazio's injuries were permanent, Allstate devalued the claim. These were not good faith efforts to settle the case.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and McMonagle, J., Concur.