OPINION
{¶ 1} Plaintiff-appellant, Chornyak Associates, Ltd. ("appellant"), appeals from the April 23, 2008 judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Richard D. Nadler ("Nadler") and Everhart Financial Group ("EFG") (collectively "appellees"), in this case involving alleged violations of the Uniform Trade Secrets Act, codified at R.C. 1333.61 et seq. *Page 2 
 {¶ 2} Appellant is a financial planning firm and Nadler is a certified public accountant, a certified financial planner, and a licensed securities broker. Appellant employed Nadler from 1999 until August 2005, at which time the two parties parted ways when Nadler refused to sign a non-competition agreement. While he was employed with appellant, all of his clients' accounts were maintained in the custody of a third-party licensed securities broker-dealer, Royal Alliance Associates, Inc. ("Royal Alliance"), which paid commissions for transactions associated with those accounts. It paid all commissions associated with Nadler's clients directly to Joseph Chornyak, appellant's sole owner. Chornyak is also a licensed securities broker. The commissions were not paid to appellant because appellant is not a licensed securities broker or broker-dealer.
 {¶ 3} Within ten days of his termination, Nadler began work as a certified financial planner with EFG and later became licensed as a registered representative (securities broker) with third-party broker-dealer Cambridge Investment Research. Some of Nadler's clients followed him to EFG. At the time of Nadler's termination from appellant's employ, he had approximately ten floppy disks at his home, which contained documents and information related to his employment with appellant. He uploaded some of that information to EFG's computer server. Nadler subsequently destroyed the floppy disks. Particularly relevant to this case, the disks contained one Microsoft Word document ("the Word document"), which the parties and the court termed "the recommendations document" because it contained a list of recommendations to clients; and two Microsoft Excel spreadsheet templates ("the Excel templates").
 {¶ 4} On October 28, 2005, appellant filed the within action against appellees, alleging that they had misappropriated appellant's trade secrets, and requesting damages *Page 3 
and injunctive relief. Specifically, appellant alleged that Nadler had taken appellant's trade secrets contained on the numerous floppy disks and on Nadler's home personal computer at the time he left appellant's employ. Appellant also brought a claim for breach of an employment agreement, but later voluntarily dismissed that claim.
 {¶ 5} On November 9, 2005, the parties entered into an agreed permanent injunction that permanently restrained appellees, "directly or indirectly, from disclosing, using, transferring or destroying any Chornyak Associates, Ltd. trade secret(s) as that term is defined in R.C. § 1333.61 in any form whatsoever including originals, copies, other reproductions, derivatives, or computerized information, in any form whatsoever." Appellant later sought leave to amend its complaint on two separate occasions, in order to add claims for conversion, breach of fiduciary duty, civil conspiracy, tortious interference with contract, and R.C. 2913.04 (anti-hacking) violations. The court permitted appellant to amend its complaint to assert claims for conversion and anti-hacking.
 {¶ 6} In November 2005, appellees filed a motion to join a necessary party, to wit: Royal Alliance, arguing that it was a necessary party because Royal Alliance — not appellant — was the real party in interest with respect to any commissions that appellant claimed it had lost as a result of Nadler's alleged misappropriation of trade secrets. Appellees also filed a motion to compel arbitration before the National Association of Securities Dealers ("NASD"). The trial court denied the motion, ruling that appellant could seek to protect its own trade secrets without joining Royal Alliance as a party. The court further ruled that arbitration was not required because appellant is not a member of the NASD. *Page 4 
 {¶ 7} Both appellant and appellees filed motions for summary judgment on January 29, 2007. The court denied appellant's motion for summary judgment. The court granted summary judgment to EFG as to appellant's trade secrets, conversion and anti-hacking claims, and granted summary judgment to Nadler as to appellant's conversion and anti-hacking claims. Thus, the only claim remaining for adjudication was appellant's trade secrets claim against Nadler. In its decision, the court stated that because Chornyak is the party with the direct contractual right to commissions from Royal Alliance and because any interest appellant has in the commissions flows through Chornyak, Chornyak is a necessary party to the litigation if appellant is seeking damages based on alleged lost commissions. The court granted appellant leave to amend its complaint to add Chornyak as a plaintiff. The court stated that failure to do so "will result in the court prohibiting [appellant] from introducing evidence of the lost commissions at trial to establish actual monetary damages."[1] Nonetheless, appellant did not amend its complaint to add Chornyak as a plaintiff.
 {¶ 8} On April 6, 2007, appellant filed a motion for an order to show cause and a finding of contempt. Specifically, appellant alleged that its April 24, 2006 forensic analysis revealed that appellees had violated the terms of the permanent injunction when, after November 9, 2005, they electronically retrieved and used the Word document and the Excel templates allegedly containing its trade secrets. Appellees filed a memorandum in opposition, and appellant filed a reply memorandum. *Page 5 
 {¶ 9} On May 25, 2007, the court journalized an "Entry Scheduling Show Cause Hearing Simultaneously With the Trial on the Merits." Therein, the court stated:
 Because many of the issues relevant to plaintiff's contempt motion, particularly the issue of whether items allegedly used by defendants constitute plaintiff's trade secrets, are identical to the issues to be determined at trial, the court finds that the evidentiary hearing on plaintiff's contempt motion shall be held by the court simultaneously with the trial on the merits on July 16, 2007 in order to promote judicial economy and to preserve party resources.
 To the extent that evidence relevant only to the contempt motion must be presented, the court will hear that evidence outside the presence of the jury. The court will rule upon plaintiff's contempt motion based on the evidence presented at trial and based upon any additional evidence presented outside the presence of the jury.
 {¶ 10} On June 6, 2007, the parties came before the court for a status conference. In an entry journalized June 8, 2007, the court made certain orders based on its discussions with the parties during the status conference. Among others, the court ordered that appellant "draft a proposed show cause order based on its contempt motion filed on April 6, 2007." On June 25, 2007, the trial court journalized a "Pretrial Order" stating "[t]his matter is set for a jury trial before the undersigned judge scheduled to commence on Wednesday, July 18, 2007 at 9:00 a.m."[2]
 {¶ 11} However, on June 27, 2007, the trial court journalized appellant's "Agreed Entry, Summons and Order to Appear." Therein, the parties agreed[3] and the court ordered as follows:
 1. Upon motion of [appellant] and for good cause shown, [appellees] * * * are hereby summoned and ordered to appear *Page 6 
 * * * on July 18, 2007 at 9:00 a.m., to show cause why one or both Defendants should not be found in contempt for failure to obey a prior court order, that being the Agreed Entry of November 9, 2005, granting a permanent injunction against the Defendants in favor of the Plaintiff.
 2. The foregoing hearing shall be limited to the following issues:
 (a) Did Richard Nadler acquire records, documents or information of [appellant];
 (b) Whether any of the records, documents or information allegedly acquired by Richard Nadler and allegedly used by Richard Nadler after November 9, 2005, constitute trade secrets of [appellant] as that term is defined in R.C. 1333.61;
 (c) Whether one or both Defendants have violated the Court's permanent injunction;
 3. The Court's findings of fact and conclusions of law upon the issues listed above shall be determinative for all further proceedings in the trial court, whether before the bench or a jury, but shall remain subject to appeal from any final judgment or order. In the event of a ruling in favor of the Plaintiff on the Show Cause Motion, Plaintiff may elect to recover remedies available for a finding in contempt and damages in further proceedings before the bench and/or a jury.
 4. The jury trial scheduled for July 16, 2007 is continued until the _________ day of _________, 2007 at ______ ___.m.[4]
 {¶ 12} On July 17, 2007, one day prior to the scheduled evidentiary hearing, appellant filed a motion in limine seeking to exclude the testimony of appellees' expert witness, Heinz Ickert ("Ickert") on the ground that appellees had not disclosed Ickert until July 2, 2007. Appellees intended to present Ickert's testimony on the central issue of the *Page 7 
case; that is, whether or not the Excel templates and the Word document constituted or contained appellant's trade secrets.
 {¶ 13} The court denied the motion. The court noted that appellant had not identified the allegedly misappropriated trade secrets either in the original complaint or in the amended complaint, and that appellant had not provided to appellees the evidence upon which it intended to rely until May 31, 2007. The court reasoned that because appellant had not produced the evidence until three months after the deadline for supplemental disclosure of witnesses, and in light of the fact that appellees disclosed Ickert within 30 days of receiving that evidence and had made him available for a pre-trial deposition, his testimony should not be excluded.
 {¶ 14} The court held an evidentiary hearing on July 18, 19, and 20, 2007, the exact nature of which was somewhat difficult to discern. As noted above, the court initially ordered that the motion for contempt would be heard simultaneously with the trial on the merits; however, the court later journalized the parties' agreed entry that the July 2007 hearing would concern only the motion for contempt and the jury trial on the merits would be postponed to an undetermined date. At the commencement of the hearing on July 18, 2007, the court referred to the hearing as a "trial"[5] and reiterated that "[t]he parties have agreed that the determination of these issues, findings of fact and conclusions of law, will be determinative for all other proceedings in this Court with respect to this case."[6] *Page 8 
 {¶ 15} Counsel for appellees referred to the hearing as a "bench trial,"[7] but both counsel also referred to the hearing as dealing only with the motion for contempt.[8] The parties' opening statements focused on the motion for contempt. The court did not empanel a jury. In their post-trial memoranda, both parties discussed only the contempt motion, not the merits of appellant's claims for damages. Both parties focused their discussions of the evidence adduced at the three-day hearing in terms of whether or not the information subject of that hearing did, or did not, constitute appellant's trade secrets.[9]
 {¶ 16} At the commencement of the hearing, the court stated, "[t]he key issue, of course, is whether the information, records, documents that may have been taken * * * constitute trade secrets of [appellant] as defined in the law."[10] On November 30, 2007, the court issued a decision, including findings of fact and conclusions of law. In its decision, the court reiterated that the parties had previously agreed "that the court's findings of fact and conclusions of law upon these issues shall be determinative for all further proceedings before this court."[11] At the conclusion of its lengthy decision, the trial court determined that:
 * * * Nadler acquired some records, documents, and information of [appellant's] prior to the termination of his employment and that some of this information was uploaded to the EGF [sic] server. However, the court further finds that the records, documents, or information acquired by Mr. Nadler and allegedly used by Mr. Nadler after November 9, 2005 do not constitute trade secrets of [appellant] as that term is defined in R.C. 1333.61. Finally, the court finds that *Page 9 
[appellant] has presented insufficient evidence that either Mr. Nadler or EFG violated the permanent injunction order.[12]
 {¶ 17} On January 23, 2008, the trial court journalized a Notice of Status Conference setting a status conference for February 21, 2008. The next, and final, document in the record of the trial court proceedings is the April 23, 2008 judgment entry from which appellant has appealed, which is an order signed by the trial court and counsel for appellees, and which states the following:
 Upon agreement of the parties, the Court held an evidentiary hearing on July 18, 19 and 20, 2007. The parties agreed that the Court's Findings of Fact and Conclusions of Law from this hearing shall be determinative for all further proceedings before the Court.
 In its Findings of Fact and Conclusions of Law filed on November 30, 2007, the Court found as follows.
 A. That Defendant Nadler acquired some of Plaintiff's records, documents, and information prior to the termination of his employment with Plaintiff and that some of this information was uploaded to Defendant Everhart's server;
 B. That the records, documents, or information acquired and allegedly used by Defendant Nadler do not constitute Plaintiff's trade secrets as defined by Ohio law, and
 C. That Plaintiff did not present sufficient evidence that either Defendant violated the permanent injunction order.
 Because all claims have been resolved, there is no just cause for delay.
 {¶ 18} With the foregoing judgment entry, the trial court terminated the case. Appellant appealed to this court, and advances three assignments of error for our review, as follows: *Page 10 
 FIRST ASSIGNMENT OF ERROR.
 The Trial Court Abused its Discretion in Overruling Appellant's Motion in Limine and Erred in Considering the Testimony of Expert Witness Heinz Ickert.
 SECOND ASSIGNMENT OF ERROR.
 The Trial Court Erred in Concluding That the Excel/Word Templates Misappropriated and Used by Richard Nadler Were Not Trade Secrets of the Appellant and Therefore the Appellees Did Not Violate the Permanent Injunction.
 THIRD ASSIGNMENT OF ERROR.
 It Was Error for the Trial Court to Rule in Advance of Trial That Appellant Had Standing to Bring Suit to Recover for the Misappropriation of Trade Secrets but Did Not Have Standing to Prove Damages Arising from the Misappropriation of Trade Secrets by Showing the Commissions Lost by the Appellant or the Commissions Gained by Appellee Richard Nadler.
 {¶ 19} In its first assignment of error, appellant argues that it was error for the trial court to permit appellees to introduce Ickert's testimony at the evidentiary hearing. "A party is under a duty seasonably to supplement his response with respect to any question directly addressed to * * * the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify." Civ. R. 26(E)(1)(b). "Expert testimony may be excluded as a sanction for violation of Civ. R. 26(E)(1)(b) which imposes a duty upon a party to disclose the identity of each person to be called as an expert and the subject matter upon which the expert is expected to testify." Schoedinger v. Hess (June 8, 2000), Franklin App. No. 99AP-1254, 2000 Ohio App. LEXIS 2409, at *20, citing Shumaker v. OliverB. Cannon Sons, Inc. (1986), 28 Ohio St.3d 367, 370, 28 OBR 429,504 N.E.2d 44. Exclusion is also a permissible *Page 11 
sanction for failure to observe local rules. Huffman v. Hair Surgeon,Inc. (1985), 19 Ohio St.3d 83, 85, 19 OBR 123, 482 N.E.2d 1248.
 {¶ 20} The trial court's decision whether to exclude a witness in such circumstances is a matter of discretion. Schoedinger, supra, at *21. An appellate court will only reverse such a decision if the same constitutes an abuse of discretion. Id. "[A]n abuse of discretion means more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Perkins v. OhioDept. of Transp. (1989), 65 Ohio App.3d 487, 496-497, 584 N.E.2d 794.
 {¶ 21} "One of the purposes of the Rules of Civil Procedure is to eliminate surprise." Jones v. Murphy (1984), 12 Ohio St.3d 84, 86,12 OBR 73, 465 N.E.2d 444. It is the "existence and effect of prejudice resulting from noncompliance with the disclosure rules [that] is of primary concern" when evaluating a motion in limine such as appellant's.Huffman, supra, at 85. Our review of the record reveals that appellant was not unfairly surprised or prejudiced by appellees' disclosure of Ickert as an expert witness after the court-imposed deadlines for filing witness disclosures had passed. To begin, appellant did not claim any prejudice in its motion in limine. The record also reveals that, though appellees made Ickert available for a pre-trial deposition, appellant never requested to depose him. Appellant also did not request a continuance of the hearing date.
 {¶ 22} Moreover, appellant failed to timely identify and provide to appellees the information upon which its misappropriation allegations were based. Appellant never identified the Excel templates as being misappropriated trade secrets in either its original complaint or its amended complaint. The first time it did so was in its April 6, 2007 motion to show cause. Appellant based that motion on a computer forensic report concerning *Page 12 
the Excel templates, but did not forward that evidence and other documents associated therewith (which Ickert later reviewed and about which he testified) until April 3, 2007 (first batch) and May 31, 2007 (second and final batch). By this time, the trial court's witness disclosure deadlines had expired months earlier. It was only after appellant provided the information that appellees could take the information to a potential expert witness for analysis.
 {¶ 23} Appellees disclosed Ickert as a witness in an e-mail to appellant's counsel dated July 2, 2007, one month after appellees' counsel received the final batch of documents. This is not an unreasonable time period for a party's counsel and its expert witness to review and discuss such documents so as to be prepared to disclose the witness. In order to prevent unfair surprise and prejudice to either party under the facts of this case, the trial court could have sanctioned appellant for its late production of evidence by barring appellant from introducing it, or it could have admitted the evidence and allowed appellees to call their expert witness to testify about the evidence. The decision was entirely within the trial court's discretion, and it chose the latter course.[13] Based on our review of the record, we find no abuse of discretion in the trial court's denial of appellant's motion in limine, and its refusal to reconsider that ruling when appellant renewed its motion at trial. For this reason, appellant's first assignment of error is overruled.
 {¶ 24} In its second assignment of error, appellant argues that the trial court erred in determining that the Excel templates, and the Word document also subject of the *Page 13 
evidentiary hearing, are not trade secrets. "In reviewing a trial court's judgment following a bench trial, `an appellate court is "guided by the presumption" that the trial court's findings are correct.'Patterson v. Patterson, Shelby App. No. 17-04-07, 2005-Ohio-2254, ¶ 26, quoting Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80,10 OBR 408, 461 N.E.2d 1273. Thus, `a judgment supported by some competent, credible evidence will not be reversed on appeal unless it is against the manifest weight of the evidence.' Patterson, supra."Broadstone v. Quillen, 162 Ohio App.3d 632, 637, 2005-Ohio-4278,834 N.E.2d 424.
 {¶ 25} "[A] claimant asserting trade secret status has the burden to identify and demonstrate that the material is included in categories of protected information under the statute." Fred Siegel Co., L.P.A. v.Arter Hadden, 85 Ohio St.3d 171, 181, 1999-Ohio-260, 707 N.E.2d 853. "The question whether a particular knowledge or process is a trade secret is, however, a question of fact to be determined by the trier of fact upon the greater weight of the evidence." Id., citing ValcoCincinnati, Inc. v. N D Machining Serv., Inc. (1986),24 Ohio St.3d 41, 47, 24 OBR 83, 492 N.E.2d 814.
 {¶ 26} In 1994, the General Assembly enacted the UTSA, R.C. 1333.61
through 1333.69. The purpose of Ohio's trade secret law is to maintain commercial ethics, encourage invention, and protect an employer's investments and proprietary information. Levine v. Beckman (1988),48 Ohio App.3d 24, 28, 548 N.E.2d 267. Ohio's trade secret law defines a "trade secret" as:
 [I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, *Page 14 
addresses, or telephone numbers, that satisfies both of the following:
 (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
 (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
R.C. 1333.61(D).
 {¶ 27} Furthermore, in State ex rel. The Plain Dealer v. Ohio Dept. ofIns., 80 Ohio St.3d 513, 524-525, 1997-Ohio-75, 687 N.E.2d 661, the Supreme Court of Ohio established a six-factor test for determining whether information constitutes a trade secret pursuant to R.C. 1333.61(D): "(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information[;] and (6) the amount of time and expense it would take for others to acquire and duplicate the information." Id., citing Pyromatics, Inc. v.Petruziello (1983), 7 Ohio App.3d 131, 134-135, 7 OBR 165,454 N.E.2d 588.
 {¶ 28} There is no presumption that a particular method, knowledge, process or technique acquired by an employee during his tenure of employment is a trade secret. Water Mgt., Inc. v. Stayanchi (1984),15 Ohio St.3d 83, 15 OBR 186, 472 N.E.2d 715, paragraph one of the syllabus. Thus, "a trial court should examine those facts which *Page 15 
show the extent to which information is known outside the business and the precautions taken to guard the secrecy of the information." Id., paragraph two of the syllabus.
 {¶ 29} With respect to the Word document, the trial court found that it did not constitute a trade secret because it was not the subject of sufficient efforts to maintain its secrecy. The court found that the document had been published repeatedly, to hundreds of appellant's clients, and had been given to those clients to disseminate as they saw fit. The court also found that the Word document contains information that is commonly known within the financial planning industry. Thus, the trial court concluded, appellant had "presented no evidence that the [Word document] derives any independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable to others."[14]
 {¶ 30} "The subject of a trade secret must be secret, and not be of public knowledge or of a general knowledge in the trade or business."Kewanee Oil Co. v. Bicron Corp. (1974), 416 U.S. 470, 475,94 S.Ct. 1879, 40 L.Ed.2d 315. Chornyak testified that he had handed out "more than a thousand" copies[15] of the Word document to clients. Joseph Chornyak, Jr. testified that once documents are handed out, they became the property of the clients, with nothing to prevent the clients from further disseminating them.[16] Nadler testified that at least 45 of his current clients possessed copies of the Word document, and had received it while Nadler was still employed with appellant. Nadler testified that the Word document contained recommendations to clients that are routinely known and utilized in the financial planning industry. On the record *Page 16 
before us, we conclude that the trial court's determination as to the Word document is supported by the greater weight of the competent, credible evidence.
 {¶ 31} The Excel documents consisted of one tax projection template ("tax template") and one retirement income template ("retirement template"). The trial court found that Chornyak created the templates in 1993, when Excel was a relatively new piece of software, which made the process more laborious than it would be today. The tax template is based on formulas and rates prescribed by the Internal Revenue Service. The retirement template is based on mathematical formulas routinely used by financial professionals to project the value of investments at different future points in time, and to discount the amount of those investments to present value. The court found that the templates are used as a presentation tool to walk clients through recommended financial strategies and have been used hundreds of times to make presentations to appellant's clients. Paper and PDF versions of particular clients' forecasts, based on the templates, have been given to appellant's clients.
 {¶ 32} The trial court found that the general content of the templates, such as the categories of information included therein, and the order of the categories, are not trade secrets because they had been disseminated to hundreds of clients, with no protections against further dissemination. The court also found that the mathematical formulas upon which the templates are based are not trade secrets because they are not unique; rather, they are formulas promulgated by the Internal Revenue Service and/or used by and generally known in the financial planning industry. Finally, the court found that because appellant had not presented any evidence as to the underlying structure of the templates (it had only produced hard copies of the templates, containing data), the court had no way *Page 17 
of ascertaining whether the underlying structure was unique enough to be considered a trade secret. The underlying structure was not visible from the outward appearance of the templates in evidence, and appellant failed to make available to the court the electronic version of the templates.
 {¶ 33} In any case, the trial court found, this underlying structure, or electronic version, was not a trade secret because it was accessible to any of appellant's employees, and had been used by virtually all of them. The court found that computer passwords and a firewall in its server were not the kind of steps to guard the secrecy of the templates that would demonstrate trade secret status. Finally, the court determined that there was insufficient evidence to establish that the templates were unique enough to confer upon appellant any competitive advantage from the exclusive use of their underlying structure.
 {¶ 34} All of the foregoing findings are supported by the testimony of Ickert and Nadler. Nadler testified that the Excel documents were simple spreadsheets, the basic functions of which are present in any Excel spreadsheet. He also testified that free versions of such documents are available via the Internet. He stated that every formula contained in the spreadsheets is drawn directly from Internal Revenue Service tax publications. He stated that for each individual client he would have to modify the Excel documents to adjust for the client's individual tax and income situation, by adding additional lines of information.
 {¶ 35} He testified that there was no master form for either of the Excel documents kept on appellant's server and that Nadler, as the only certified public accountant in the office, was the one who would modify the documents to adjust for changes to the tax laws *Page 18 
and to clients' situations. Neither of the Excel documents contained any indication that it was exclusively the property of appellant, nor was Nadler ever told that he was to keep them confidential. There were no company policies establishing the Excel documents as trade secrets or confidential information. Ninety percent of his clients possessed documents like those that appellant introduced as examples of calculations performed using the Excel documents. Nadler testified that he knew how to utilize, had utilized, and had taught others how to utilize, Excel spreadsheets like the Excel documents prior to becoming employed with appellant. Ickert reviewed the Excel documents and the underlying structure of them. He opined that the Excel documents are very basic and unsophisticated and do not have independent economic value. He also testified that tax professionals and financial planners routinely use spreadsheet programs such as the Excel documents, and opined that the Excel documents would not provide anyone in possession of them with a competitive advantage over others.
 {¶ 36} Based upon all of the evidence adduced, the trial court's determination that the Excel templates are not trade secrets is supported by competent, credible evidence. Upon a thorough review of the record, we find the trial court's judgment is supported by the greater weight of the competent, credible evidence. As such, we overrule appellant's second assignment of error.
 {¶ 37} In its third assignment of error, appellant argues that the trial court erred in ruling that Joseph Chornyak is the real party in interest with respect to the damages claimed in this action and, as such, that unless appellant amended its complaint to add him as a party-plaintiff, it would be prohibited from introducing evidence of damages at trial. This assignment of error is moot in light of our disposition of appellant's second *Page 19 
assignment of error. Because we found no error in the trial court's determination that the information subject of appellant's claims did not constitute trade secrets, discussion of the damages element of appellant's claims is unnecessary and would not affect our disposition of this appeal. Accordingly, we overrule appellant's third assignment of error as moot.
 {¶ 38} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
PETREE and KLATT, JJ., concur.
[1] March 19, 2007 Decision and Entry, 19.
[2] June 25, 2007 Pretrial Order, 1.
[3] The entry bears the signatures of the attorneys for both appellant and appellees.
[4] The typed blanks in this line remained blank and, it appears, no jury trial date was ever established after this point in the record.
[5] Tr. 4.
[6] Tr. 5.
[7] Tr. 12.
[8] Tr. 15 (appellant's counsel); Tr. 24 (appellees' counsel).
[9] Insofar as the parties agreed that the trial court's findings of fact from the contempt hearing would apply to the merits of appellant's trade secrets case, it appears that appellant essentially waived its right to a jury trial on the merits, without explicitly doing so.
[10] Tr. 5.
[11] November 30, 2007 Findings of Fact and Conclusions of Law, 2.
[12] November 30, 2007 Findings of Fact and Conclusions of Law, 27.
[13] Again, the court could have entertained a motion for continuance, had any party requested one, but no party did so.
[14] Findings of Fact and Conclusions of Law, 18-19.
[15] Tr. Vol. II, 448.
[16] Tr. Vol. II, 374. *Page 1