**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 17, 2015**

# In the Court of Appeals of Georgia

A15A1334. CRUMPTON v. VICK'S MOBILE HOMES, LLC et al.    BO-065

BOGGS, Judge.

This appeal involves the interpretation of OCGA § 14-11-601.1 (b) (4) (D), a portion of the Code section governing the cessation of membership in a limited liability company. The trial court granted partial summary judgment in favor of appellees, holding that appellant Sharon Crumpton ceased to be a member of two limited liability companies by filing a petition seeking dissolution of those companies. While the statute is not a model of clarity, construing the relevant language in its context and in light of our decision in *Sayers v. Artistic Kitchen Design, LLC*, 280 Ga. App. 223 (633 SE2d 619) (2006), we conclude that the trial court misinterpreted the meaning of this provision. We therefore reverse.

Sharon A. Crumpton ("Sharon") and Raymond C. Crumpton ("Raymond") are brother and sister who inherited a mobile home park from their father. Two limited liability companies, Vick's Mobile Homes, LLC and Crumpton Holdings, LLC, were formed in connection with the ownership and management of the park. The siblings have an acrimonious relationship. Sharon has accused Raymond of mismanaging the finances of the mobile home park and preventing her from accessing the park bank account. Raymond for his part has alleged that Sharon is interfering with the park manager, who was appointed by the trial court pending resolution of the dispute and was given exclusive authority to manage the park with no interference from the siblings. Raymond submitted the affidavits of tenants who averred that Sharon harassed, stalked, and threatened them, drove and parked erratically while wearing indecent attire, fed numerous stray cats and raccoons, and "danc[ed] backward in a Michael Jackson moon-walking manner along the streets of Vick's, wearing a belly dancer costume, in an inappropriate and bizarre manner."[1]

---

[1]Raymond filed a motion for contempt making these assertions, supported by affidavits from tenants of the park. The trial court continued the motion while instructing Sharon to turn over her keys to the drop box, make a list of delinquent tenants, deliver certain rent checks, cooperate with the manager, and avoid contact with tenants. It also assessed attorney fees against Sharon.

2

Sharon initiated this action by filing a "Petition for Equitable Relief, Accounting, and Dissolution" against the LLCs and Raymond. She alleged that Raymond has failed "to properly protect and manage the assets and business interests of the LLCs," causing "dangerous conditions for the residents" and "possible financial loss." She further alleged that she "faces immediate and irreparable harm and loss unless the Court grants her the sole authority to manage and protect the assets of the LLC[s]." Her prayer for relief asked in part "that Vick's Mobile Homes, LLC and Crumpton Holdings, LLC be dissolved, all of their assets be distributed equally to its members, and this Court declare the rights and obligations of the parties to this proceeding."

Raymond moved for judgment on the pleadings or in the alternative for partial summary judgment on the basis of standing, arguing that Sharon's petition for dissolution of the companies disassociated Sharon as a member under OCGA § 14-11-601.1 (b) (4) (D). The trial court granted partial summary judgment, citing *Sayers*, supra, 280 Ga. App. at 224-225, for the proposition that subsection (D) established "a default rule that a member who seeks reorganization 'for the member' ceases to be a member of the company." It then concluded: "Here, plaintiff seeks dissolution of the LLCs. Clearly, she is seeking relief as a member for herself and not for defendant.

3

As such, OCGA § 14-11-601.1 (b) (4) (D) is applicable and plaintiff ceased to be a member when she filed for dissolution." This appeal followed.

OCGA § 14-11-601.1 (b) provides in pertinent part:

A person ceases to be a member of a limited liability company upon the occurrence of any of the following events . . . .

(4) Subject to contrary provision in the articles of organization or a written operating agreement, or written consent of all other members at the time, the member (A) makes an assignment for the benefit of creditors; (B) files a voluntary petition in bankruptcy; (C) is adjudicated a bankrupt or insolvent; (D) *files a petition or answer seeking for the member any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation*; (E) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against the member in any proceeding of this nature; or (F) seeks, consents to, or acquiesces in the appointment of a trustee, receiver, or liquidator of the member or of all or any substantial part of the member's properties[.]

(Emphasis supplied.) The trial court here concluded that the phrase "for the member" in subsection (b) (4) (D) is intended to apply whenever a member has filed a petition or answer in an action against an LLC, seeking, in a general sense, relief or some other benefit for the member rather than for the LLC itself. But the relevant rules of

4

statutory construction demand the conclusion that this subsection applies when the member has filed a separate action seeking *its own* "reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief." This conclusion is consistent with our holding in *Sayers*, supra.

As we observed there,

> In construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry. Further, … statutory construction must square with common sense and sound reasoning.

> Moreover, language in one part of the statute must be construed in light of the legislature's intent as found in the whole statute.

(Citations, punctuation, and footnotes omitted.) 280 Ga. App. at 224 (1).Therefore, as in *Sayers*, we examine OCGA § 14-11-601.1 (b) (4) (D) in the context of the Code section as a whole, and subsection (b) in particular.

In *Sayers*, one group of individual members of an LLC sought to reorganize the LLC and remove another set of individual members from the company. Id. at 223. We

5

rejected the contention that filing the petition caused the movants to cease to be members of the LLC under OCGA § 14-11-601.1 (b) (4) (D), observing:

> That subsection establishes a default rule that a member who seeks reorganization "for the member" ceases to be a member of the company. The subsection does not say that a member who seeks reorganization *for a different member* ceases, himself, to be a member of the company. The [appellees] sought the disassociation of the [appellants], not of themselves. Thus, subsection 14-11-601.1 (b) (4) (D) does not apply here.

(Emphasis in original.) Id. at 224-225 (1).

In the case before us, we must examine subsection (b) as a whole, and the provisions of subsection (b) (4) in particular, to determine the meaning of "for the member." Looking at subsection (b) as a whole, it recites a list of actions that a member of a limited liability company may take – or undergo – that result in a change of that member's own status so as to render the member unable to continue as a member of the company. These actions include some that the member may take on its own behalf, and others that are taken against it, as well as events that occur to affect the member. They include some events that only occur to an individual, such as dying or being judged incompetent to manage his or her affairs. OCGA § 14-11-601.1 (b) (6). They also include many things that either an individual or an artificial

6

person may do, for example filing bankruptcy, OCGA § 14-11-601.1 (b) (4) (B); assigning the member's entire interest in the company, OCGA § 14-11-601.1 (b) (1); or as provided in the company's articles of organization or operating agreement, OCGA § 14-11-601.1 (b) (2) and (c). Finally, subsection (b) (4) (D), at issue here, lists actions more proper to an artificial person, such as "reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief." So a consistent reading of subsection (b) as a whole requires that "for the member" in subsection (b) (4) (D) refers to an action by or against the member affecting that member.[2]

This reading is consistent with the language of OCGA § 14-11-601.1 (b) (4) (E), which provides for cessation of membership when a member files a pleading that admits or fails to contest such allegations, and that of OCGA § 14-11-601.1 (b) (5), which similarly provides for cessation of membership when "any proceeding *against the member* seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief" has not been dismissed, vacated or stayed

---

[2]We note that the Georgia Limited Liability Company Code defines a "member" as "a person who has been admitted to a limited liability company as a member as provided in Code Section 14-11-505 and who has not ceased to be a member as provided in Code Section 14-11-601 or 14-11-601.1." OCGA § 14-11-101 (16). It further defines a "person" as "an individual, business entity, business trust, estate, trust, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity." OCGA § 14-11-101 (19).

within a certain time. (Emphasis supplied.) And as we observed in *Sayers*, this reading is also consistent with OCGA § 14-11-601.1 (b) (5), providing for actions against a member:

> Under [appellants'] interpretation, one member could never seek the disassociation of another, because the very act of doing so would disassociate the first member. That construction makes no sense, and it fails to harmonize with subsection 14-11-601.1 (b) (5), which plainly contemplates that one member may initiate a proceeding to disassociate another.

Id. at 225 (1).

This reading is also consistent with the decisions of the North Carolina Court of Appeals in *Crouse v. Mineo*, 189 N.C. App. 232, 241-242 (I) (B) (658 SE2d 33) (2008) (citing *Sayers*; similar statute "provides that a business entity member who seeks dissolution *for itself* ceases to be a member of an LLC. The statute does not cause the disassociation of a member who files a petition for dissolution of the LLC of which he is a member" (emphasis in original)), and of the Ohio Court of Appeals in *Darwin Limes, LLC v. Limes*, No. WD-06-049, 2007 Ohio 2261, 2007 Ohio App. LEXIS 2105 (Ohio Ct. App., May 11, 2007) (citing *Sayers*; similar provision not

applicable to individual member who "did not seek dissolution *for himself*. He filed an alternative complaint for dissolution for the LLC." (Emphasis in original.))

The trial court therefore erred in determining that Sharon's petition to dissolve the LLCs caused her to cease to be a member of those companies, and its grant of partial summary judgment to that effect must be reversed.

*Judgment reversed. Doyle, C. J. and Phipps, P. J., concur*.